MILLER, STATE REVENUE AGENT, v. TUCKER et al.*
SAME v. HARDING et al.

(In Banc. Nov. 2, 1925.)

[105 So. 774. Nos. 24525, 24527.]

1. COUNTIES. *There is no liability on bonds of supervisors for authorized allowances, though made in disregard of statutory directions.*

All statutes *in pari materia* are to be construed together, and so construing section 346, Code of 1906 (section 3719, Hemingway's Code), and section 293, Code of 1906 (section 3665, Hemingway's Code), there is no liability on the bonds of members of the board of supervisors for allowances made to objects authorized by law, although the board of supervisors disregarded statutory directions in reference to such claims, and although the contract between the person and county involved in such allowance may be declared void by such regulating statutes. *Paxton* v. *Baum*, 59 Miss. 531, cited. (By a divided court.)

2. COUNTIES. *County supervisors participating in allowance for insuring courthouse, jail, etc., against tornadoes held liable on bonds.*

Under section 319, Code of 1906 (section 3692, Hemingway's Code), providing that the board of supervisors may have the courthouse, jail, and other buildings of the county, the furniture thereof, and the books of the county, insured against loss by fire, it is not

(146)

permissible for the board to insure such property or any of the
county property against loss by tornado, and allowance therefor
by the board is to an object not authorized by law, and the mem-
bers of the board participating in the allowance are liable on their
bonds.

3. CONSTITUTIONAL LAW.  *Counties. Paupers.  Board of supervisors
   may not vote county funds to private charitable organization;
   board of supervisors may not vote public money for support of
   persons not declared to be paupers by some public authority;
   board of supervisors may not delegate power to determine who
   are paupers to other persons or organizations.*

   The board of supervisors have no authority to vote public funds to
   a private charitable organization to be dispensed according to the
   judgment and discretion of such private person or organization.
   While the board of supervisors may support paupers at the public
   expense, this authority does not extend to persons not declared
   to be paupers by some public authority.  This duty of determin-
   ing who are paupers is vested in the board of supervisors, and
   such board cannot delegate its authority to other persons or
   organizations.

4. PAUPERS. *To entitle one to be supported at public expense, provi-
   sions of statute relating thereto must be complied with; allow-
   ances made to persons not adjudicated to be paupers are unau-
   thorized, and members of county board of supervisors are liable
   therefor on bonds.*

   To entitle a person to be supported at the public expense, the
   provisions of the statute on that subject must be complied with,
   and an adjudication that the person to be supported is a pauper
   must be entered on the minutes of the board of supervisors; and
   allowances made to persons not adjudicated to be paupers are un-
   authorized by law, and the board members are liable therefor on
   their bonds.

5. STATUTES. *Highways. If legislature amends named statute by two
   separate acts at same session, last act prevails; last act of legis-
   lature amending statute held to prevail.*

   Where the legislature amends a named statute by two separate
   acts of the legislature at the same session, the last act prevails.
   In accordance with this rule, chapter 258, Laws of 1912, was
   amended by chapter 257, Laws of 1912, and chapter 177, Laws of
   1916, amending chapter 257, Laws of 1912, was, in turn, amend-
   ed by chapter 172, Laws of 1916.  *Lang* v. *Harrison County,* 114
   Miss. 341, 75 So. 126, cited.

6. COUNTIES. *Highways. County board of supervisors paying road commissioner more than five dollars per day held liable on bonds for excess.*

Under chapter 172, Laws of 1916, limiting the board of supervisors to five dollars per day salary for a road commissioner, under the provision of this section the board has no authority to exceed the statutory limit, and a salary in excess of this amount is to an object not authorized by law, and the board of supervisors are liable on their bonds for the excess of such allowance.

7. COUNTIES. *Supreme court will not review action of board of county supervisors as to amount of bond issue.*

Under chapter 176, Laws of 1914, the board of supervisors are vested with discretion as to the amount of the bond issue, and when the bond issue exceeds five hundred thousand dollars, the road commissioners provided for thereunder may be allowed the expenses provided for therein. Where the legislature itself fixed the limit, the court will not undertake to review the action of the board as to the amount above five hundred thousand dollars it may issue.

8. COUNTIES. *Discretion of board of county supervisors in acquiring grounds and buildings for use in storing road machinery, etc., will not be controlled by court.*

Under chapter 242, Laws of 1920, the board of supervisors has power to acquire grounds and buildings, or erect buildings on grounds owned by the county, to be used by the county in storing and preserving road machinery, trucks, teams, and other property, and the board is to be the judge of the location and the character of the buildings to be erected for such purpose, and their discretion will not be controlled by the court.

9. COUNTIES. *Highways. Members of board of county supervisors not liable on bond for allowances for material used on highways purchased from corporation of which road commissioner was incorporator.*

The fact that the road commissioner under the above statute was an incorporator of a corporation at the time it was incorporated, and from which corporation the board and commissioners purchased material for use on public highways, does not make the contract void, and allowances made thereunder are not recoverable against the board on its bonds. The commissioners provided for are the mere agents of the board of supervisors, and the members of the board will not be held liable for allowances made under such contract, it not being shown that the board of supervisors acted corruptly or dishonestly.

10. COUNTIES. *Members of board of county supervisors held liable on bonds for allowance of county funds to maintain county exhibit at state fair.*

Chapter 103, Laws of 1908 (sections 3782, 3783, Hemingway's Code), authorizing the board of supervisors to establish a department of agriculture, does not authorize the board of supervisors to appropriate public funds of the county to maintain an exhibit of the county at the state fair, and the allowance for such purpose is unauthorized by law, and the board of supervisors are liable on their bonds for such allowance.

11. COUNTIES. *Members of county board of supervisors held liable on bonds for allowance of county money to buy automobile for use of county superintendent of education and for insurance thereon.*

The board of supervisors has no authority to appropriate county money to the purchase of an automobile for the use of the county superintendent of education, nor to pay insurance for the upkeep of such automobile. Chapter 122, Laws of 1920, does not authorize such allowance; and such allowance is recoverable on the bonds of the board of supervisors.

12. SCHOOLS AND SCHOOL DISTRICTS. *Allowance by board of county supervisors for buying and maintaining automobile for superintendent of education held illegal.*

Chapter 577, Laws of 1920, does not authorize the board of supervisors to buy an automobile out of the public funds for the superintendent of education, nor does it authorize insurance premiums and other expenses in repairing such automobile, and allowance for this is an allowance to an object not authorized by law.

13. COUNTIES. *Allowance out of funds of agricultural high school and other school funds of special districts by county board of supervisors held not to render them liable on bonds.*

Where the county school board and the trustees of the county agricultural high school and the board of supervisors make an arrangement whereby the allowances to be paid out of the funds of the agricultural high school and other school funds of special districts are to be entered upon the minutes of the board of supervisors on the approval of the accounts by superintendent of education, to whom such authority is delegated, and where the allowances are to objects authorized by law, this does not render the board of supervisors liable on their bonds for such allowances. Such allowances are governed by the principle announced in *Paxton* v. *Baum*, 59 Miss. 531.

14. HIGHWAYS. *County board of supervisors held to have authority to
    employ attorney for road district commissioners. and to pay him
    out of funds of road district.*
    The board of supervisors have authority, under chapter 176, Laws
    of 1914, to employ an attorney for road district commissioners
    and to pay him out of the funds of the road district, and to pay
    such attorney to prepare the necessary papers for a bond issue
    out of such funds.

15. COUNTIES. *Member of county board of supervisors making contract
    with county held liable on bond for amount so received, and other
    members of board participating in allowance held liable on bonds.*
    A member of the board of supervisors making a contract in viola-
    tion of section 109 of the Constitution of 1890, and sections 364
    and 1305, Code of 1906 (sections 3737 and 1038, Hemingway's
    Code), is liable on his bond for the amount so received, and the
    other members of the board participating in the allowance are lia-
    ble on their bonds for the amounts so allowed.

16. COUNTIES. *Health. Members of county board of supervisors not au-
    thorized to pay health officer's expenses in attending conventions
    outside county, and liable on bonds for such allowances.*
    The board of supervisors have no authority to pay the county
    health officer's expenses in attending conventions outside of the
    county, and the board of supervisors are liable on their bonds for
    an allowance for such officer for such purpose.

17. COUNTIES. *Statutes. Statute ratifying act of county supervisors in
    paying out county funds to object not authorized by law held
    unconstitutional, and supervisors liable on bonds for such funds.*
    Chapter 704, Laws of 1924, being a special and local law to ratify
    the act of the board of supervisors in paying out the funds of the
    county to an object not authorized by law, is unconstitutional and
    void, being prohibited by sections 87, 96, and 100 of the state con-
    stitution of 1890, as a liability in favor of the county there arose
    against the members of the board under section 346, Code of 1906
    (section 3719, Hemingway's Code), when such unauthorized al-
    lowance was made.

---

*Headnotes 1. Counties, 15 C. J., Section 196 (Anno); Construction
of statutes *in pari materia*, 25 R. C. L., p. 1060; 3 R. C. L. Supp.,
p. 1439; 4 R. C. L. Supp., p. 1619; 5 R. C. L. Supp., p. 1363; 2. Counties,
15 C. J., Section 196; 3. Paupers, 30 Cyc., p. 1128 (Anno); 4. Paupers,.
30 Cyc., pp. 1067, 1128 (Anno); 5. Highways, 29 C. J., Section 308;
Statutes, 36 Cyc., p. 1151; 6. Counties, 15 C. J., Section 196; Highways,
29 C. J., Section 297; 7. Counties, 15 C. J., Section 102; 8. Counties, 15

C. J., Section 102; 9. Counties, 15 C. J., Section 196; Highways, 29 C. J., Section 297 (Anno); 10. Counties, 15 C. J., Section 196; 11. Counties, 15 C. J., Section 196; 12. Schools and School Districts, 35 Cyc., p. 867, (Anno); 13. Counties, 15 C. J., Section 196 (Anno); 14. Highways, 29 C. J., Sections 291, 297; On power of municipal body to employ attorney, see Note in L. R. A. 1917D, 240; 15. Counties, 15 C. J., Section 196; 16. Counties, 15 C. J., Section 196; Health, 29 C. J., Section 27; 17. Counties, 15 C. J., Sections 102 (Anno), 196; Statutes, 36 Cyc., p. 1002.

APPEAL from chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Separate suits by W. J. Miller, state revenue agent, against J. W. Tucker and others, and against P. M. Harding and others, as members of the board of supervisors of Warren county. Suits argued and submitted together. From a decree below generally in favor of defendants, but allowing plaintiff a small amount of the claims sued for, plaintiff appeals. Reversed and remanded, with directions.

*A. A. Armistead, L. F. Easterling* and *Stokes V. Robertson,* for appellant.

The original bills in each of these cases were filed in the chancery court of Warren county on August 1, 1921, as shown by the dates of filing thereon. Each suit is against the separate members of the board and the sureties on their bonds for certain allowances set out in each bill, claimed to have been unauthorized by law and illegal, and for which the separate members of the board and the sureties on their bonds became personally liable.

I. *The law governing allowances by the board and personal liability of members for an allowance made by the board.* Section 293, Code of 1906, in the chapter on boards of supervisors, provides for the bond of the members and its effect, fixing the penalty of the bond according to state and county taxes for the year immediately preceding the commencement of the term of office of such

members.   The revenue agent can sue for the county.
*Robertson* v. *Bank of Batesville,* 116 Miss. 501, 77 So.
318.

Section 344, Code of 1906, provides for the criminal
prosecution of any person who shall claim or receive
from the board of supervisors of any county any fee or
compensation not authorized by law, and if a member of
such board shall knowingly vote for the payment of any
such unauthorized claim, or any appropriation not au-
thorized by law, he shall be subject to indictment and on
conviction, to fine, etc.   Comparing this section with sec-
tion 346, the court will see that the word "knowingly" is
used in the criminal section 344, but it is not used in the
civil liability section 346.   The following additional sec-
tions, of Code of 1906 are germane here: Sections 361,
364, 369, 341 and 343.

The constitution of 1890, section 170, provides for di-
viding the county into five districts and the selection of
one person for each district which persons shall consti-
tute the board of supervisors for the county. The board
shall have full jurisdiction over roads, ferries and bridg-
es, to be exercised in accordance with such regulations as
the legislature may prescribe, and perform such other
duties as may be required by law. The clerk of the chan-
cery court of each county shall be the clerk of the board
of supervisors. Under sections 341 and 343, Code of
1906, are cited the case of *Howe* v. *State,* 53 Miss. 57,
holding that the board could do valid acts only as empow-
ered by law. And further the jurisdiction over roads,
ferries and bridges could be regulated by law, but could
not be taken away, citing the cases of *Board* v. *Arrighi,*
54 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531; *Seal* v. *Don-
nelly,* 60 Miss. 658.   All other jurisdiction of the board is
given by statute under section 307, Code of 1906, and the
other sections contained in the chapter on boards of su-
pervisors in the same code.

Since the sections of the code and constitution were
adopted and after the decision of *Paxton* v. *Baum,* in
which the court discussed "irregularities"—it is con-

tended by counsel for the defendants that a failure to advertise for bids or the making of a contract in vacation, which is prohibited by law under the sections above quoted, is a mere irregularity and would not make the board liable, relying solely on this case of *Paxton* v. *Baum*—tho at the time *Paxton* v. *Baum*, was decided in April, 1882, there was no such law as is found in the Acts of 1914, chapter 206, page 274; section 6660, Hemingway's Code. Nor was there any such law as chapter 142, Laws of 1914, page 184, section 6661, Hemingway's Code, authorizing the board to pay all just claims against their respective counties, common schools or municipalities where purchase of supplies were made in violation of the provisions of chapter 123, Acts of 1912, page 123. This chapter in the Acts of 1912 is rewritten word for word in the Acts of 1914, page 274, except that contracts are allowed to be let for twelve months under the Laws of 1914 instead of three months under the Laws of 1912, and purchases in case of emergency are allowed to be made to the amount of one hundred dollars in the Laws of 1914, page 274, instead of fifteen dollars as provided by the Laws of 1912, page 123. These acts were passed long after the case of *Paxton* v. *Baum*, was decided and necessarily change the force and effect of that decision. These acts were evidently passed to meet the holding of the supreme court of Mississippi in the case of *Groton Bridge & Mfg. Co.* v. *Warren County*, 80 Miss. 214.

From the announcement in this opinion that the board of supervisors may at a subsequent meeting "*ratify*" an illegal act, we take it that the two statutes above referred to, Acts of 1912, chapter 123, pages 122 and 123, *and the Acts of* 1914, *page* 274, Hemingway's Code, sections 6660, 6661, were passed. These laws positively prohibit the board from "ratifying" any such purchases made by any individual member thereof, or "paying" for the same out of public funds.

Therefore, we say that the case of *Paxton* v. *Baum,* 59 Miss. 531, must be construed in connection with these prohibitory statutes which have made certain acts conditions precedent to the right of the board of supervisors to pay any sum out of the public funds of the county, which acts under the law as it stood at the time of the decision of *Paxton* v. *Baum,* were denominated by Judge Campbell as an "irregular and unauthorized manner." We insist, therefore, that the law is imperative that vacation contracts made by members of the board or "other persons" are unauthorized under section 369, Code of 1906, and that the säme cannot be ratified or paid for out of the public funds, as provided by the Acts of 1914, page 274, Hemingway's Code, sections 6660 and 6661, except emergencies not to exceed one hundred dollars.

In other words, the Acts of 1914, amended and changed the law as it was announced in *Paxton* v. *Baum,* in reference to irregularities in the advertisement of public work, and held that the board could not ratify or pay for, out of the public funds, any claim not advertised for, as the Acts of 1914 require. So we say that the case of *Paxton* v. *Baum,* is not controlling in this case, but it does hold that the legislature has power to regulate the action and authority of the board, and that the objects to which the board may appropriate money are designated by law and may be known to them with an attorney at their side to advise them, paid at the expense of the county; and we say there is no such thing as implied powers of the board, and they must put their finger on the section that authorized the appropriation; otherwise, it is unauthorized by law and this is made manifest by section 341, Code of 1906, which provides that the page and particular section of the law under which such allowance is made and on what account shall be specified on the minutes.

In *Leflore County* v. *Cannon,* 81 Miss. 334, Judge Calhoun said: "We need not repeat what has been so often said by this court—that in awarding contracts and making expenditures in such works, where there is a right to

make them, the requirements of the statutes must be strictly observed. Now applying that rule to the Acts of 1914 above referred to, that the requirement of the statute must be strictly observed, we insist that the board of supervisors has no right to pay any claim contracted in vacation, either by a member of the board or other person, except emergency claims not exceeding one hundred dollars." See *Marion County* v. *Woulard,* 77 Miss. 343; *Dismukes* v. *Noxubee County,* 58 Miss. 612; *Bridges* v. *Clay County,* 57 Miss. 252; *Board of Supervisors* v. *Patrick,* 54 Miss. 240; *Gilchrist-Fordney Co.* v. *Keyes,* 113 Miss. 742; *Lamar County* v. *Tally & Mason,* 116 Miss. 588; *Smith et al.* v. *Board of Supervisors of Tallahatchie County,* 124 Miss. 36, 86 So. 702; *Smith County* v. *Mangum,* 127 Miss. 192, 89 So. 913.

From these authorities it is plain that the board could act: (1) Only as is authorized by statute; (2) that its action must be recorded on the minutes which are. required by law to be kept by the clerk; (3) that whenever a claim is allowed it must be entered on the minutes and the section of the law authorizing the claim noted on the margin of the minutes; (4) that no act is authorized by law for the board of supervisors to do unless there is a statute authorizing such act to be cited by them; (5) that the board cannot authorize any one of its members or other person to make contracts in vacation, and that all such contracts are void. They are just as if they never existed, as stated by Judge Cook in the *Bolivar County case,* 111 Miss. 250; (6) that no claim shall be ratified or paid for out of public funds of the county unless the same shall have been advertised for and steps taken beforehand as provided by the Acts of 1914, page 274; (7) that the legislature has a right, and has done so, to regulate the jurisdiction of the board and all things done by the board in excess of its jurisdiction are illegal, unauthorized and void.

But it is contended by counsel for the defense that these authorities have reference to binding the county on a contract and do not refer to the allowance of a

claim against the county. We cannot draw the distinction. If the county is not liable unless there is a contract entered on its minutes within its authorized power, how could the county make any allowance for a claim which it is not authorized to do? In other words, to state our view in another way, if an injunction will lie against the board to prevent it from doing an unauthorized act, how could the performance of the same act be authorized under the laws so as to protect the board from personal responsibility? The acts are equally illegal. See *Beck* v. *Allen*, 58 Miss. 143; *Land* v. *Allen*, 65 Miss. 455; *State* v. *Vice*, 71 Miss. 912. The board is trustee of the public moneys as stated by the supreme court of Mississippi in *Lamar County* v. *Tally & Mason*, 116 Miss. 588; "The board being trustee of the public cannot divest itself of this power and duty by contract." Therefore, we deny that any defense of this suit could be made on the ground that an injunction was not sued out to prevent the payment of the unlawful allowances.

*Authorities elsewhere.* Looking now to the authorities of other states, of which states we do not know the statutory provisions, we submit the following for what it may be worth as determining the policy of the law in reference to the county boards of supervisors, called in some states county courts. *County of Wayne* v. *Reynolds*, 126 Mich. 231, 85 N. W. 574, 86 Am. St. Rep. 541; *Board of Supervisors* v. *Ellis*, 59 N. Y. 620; *Wis. Ry. Co.* v. *U. S.*, 164, 212, 41 L. Ed. 399; *Frederich* v. *Douglas County*, 96 Wis. 411, 71 N. W. 798; *Norfolk County* v. *Cook*, Am. Anno. Cases, 1913 B, p. 650, 211 Mass. 390, 97 N. E. 778.

The court will observe in section 344, Code of 1906, that as to the criminal responsibility of the person receiving money out of the county funds on an unauthorized claim, the word "knowingly" is not used as to such third person, but is used only in reference to the criminal responsibility of the board of supervisors. Our own state has held the same doctrine quoted from other states, and we refer the court to *Howe* v. *State*, 53 Miss.

57. See. also, *Jefferson County* v. *Grafton,* 74 Miss. 435, at pages 442-443, defining powers of supervisors discussed herein. Now we say, if the court please, that this authority conclusively adjudicates that the excess salary of Mr. Gorman was a swindle of Warren county by the board of supervisors. With these authorities in mind let us see what is the attitude of these defendants.

*Is the board of supervisors a court in the sense that they cannot be held personally responsible for allowances not authorized?* It was argued that the board of supervisors was a court and could no more be held liable for the adjudication of a claim against the county, even though in excess of the amount allowed by law, than the chancery court could if it should allow an administrator or guardian, as the case may be, a sum in excess of the statutory commissions. There are two answers to this position. (1) That chancery court is a court of general jurisdiction and there is no constitutional provision in reference to that court being made liable for unauthorized acts; nor is that court a trustee or an agent for the handling of public funds. The chancery court does not pay out the funds. It simply passes on the legality of the payments made by the trustees reporting to it. The board of supervisors under the constitution is limited in the performance of its duties to such as may be required by law. The chapter on Boards of Supervisors, section 346, makes them personally liable for an allowance for public funds not authorized by law. The board of supervisors when viewed as a court at all is a court of limited jurisdiction; limited by the constitution and the legislature, and when the legislature says that they shall be liable for unauthorized appropriations it is perfectly within the constitutional provision, section 170, that prescribes that they shall perform such other duties as may be required by law. While acting within their limited jurisdiction, performing the acts especially authorized by law, they are protected; when acting beyond their juri liction, either in allowing claims in excess of the amounts permitted by law or allowing claims that are not

authorized at all, they become personally liable. This is provided for by section 343, Code of 1906, denominating such allowances unlawful.

When, therefore, the board makes an allowance in excess of its authority for any purpose, compensation for services rendered, or salaries or fees for officers or materials furnished, it is denominated an illegal allowance, and, therefore, an allowance not authorized by law. With these authorities before us as a guide for the limited authority of the board of supervisors, let us now examine into the items sued for in the Tucker suit and see if they come within the authority laid down by the law.

Both of the cases argued herein could have the items divided into three classes: (1) Those allowances for which there is no authority of law given. (2) Those which were OK'd by the separate members of the board and other persons, contracted for in vacation without advertisement as the Acts of 1914 provided, and yet paid for in the face of the statute which said money should not be appropriated for such claims out of the public funds. (3) The third class of items sued for is the disposition of the bond money arising from the sale of the five hundred and one thousand dollars worth of bonds.

*Tornado insurance.* This was an allowance not authorized by law because the statute, section 319 expressly provides that the board of supervisors may insure the county buildings against *loss by fire,* and does not provide for any other kind of insurance. In other words, the expression of the one purpose excludes all others.

*Excessive allowances to board members.* The maximum sum allowable to each member of the Tucker board for the years 1916 and 1917 under sections 1878, 1879, 7141, Hemingway's Code, is a total maximum allowance of six hundred dollars each. But a grand total of two thousand seven hundred eighty dollars and ninety cents in excess has been illegally drawn out of the treasury of Warren county and appropriated by the members of the board to themselves from 1916 to 1919, inclusive. The above sections of Hemingway's Code, sections 1878 and

1879, were construed in *Brown* v. *Reeves,* 129 Miss. 755, 92 So. 825, decided July 3, 1922, while this suit was pending, and the court in that case held that the members of the board were personally liable for allowances to themselves in excess of the amount provided for in said section.

*Health officer's expenses outside of county.* Forty-five dollars and two cents was paid out for traveling expenses for Dr. Myers to New Orleans. It was shown in the evidence by agreement of counsel that Dr. Myers was the health officer with a salary of one hundred dollars per month; that he had drawn his full salary as such health officer and that this forty-five dollars and two cents was for no amount due him or contracted to be paid him by Warren county. We submit that this was an allowance not authorized by law as no statute could be pointed to under which this allowance could be paid, and, therefore, none could be cited on the minutes under section 341, Code of 1906, as authority for making the allowance. See *Monet* v. *Jones,* 10 S. & M. (Miss.) 243-244.

*King's Daughters.* Up to and including the year 1919, the board of supervisors of Warren county had appropriated thirty-four thousand nine hundred forty-one dollars and ninety cents or fourteen thousand nine hundred forty-one dollars and ninety cents in excess of the two donations authorized by the Acts of 1908 and 1912. The question presented is, Is the allowance to these King's Daughters an allowance not authorized by law? Counsel for defendants seize upon the provision in section 307, Code of 1906, defining the jurisdiction and powers of the board of supervisors, referring to the statutory jurisdiction over the subject of "paupers," and they erroneously argue from this section that because the board had jurisdiction over the subject of paupers, that they, therefore, had the right, jurisdiction and authority to make this allowance to the King's Daughters sued for, and that is their only contention. This whole subject of paupers is governed by the chapter on Paupers in the

Code of 1906, commencing with section 3566. There is *no order on the minutes adjudicating any of these alleged persons, to whom was paid this money—through the King's Daughters, to be paupers of Warren county.* The general law on the subject will be found in the note to *Cerro-Gordo County* v. *Boone,* 39 L. R. A. 161 and 163, 152 Iowa 692.

*Warren county* is now supporting a *"poorhouse"* at an expense shown by the evidence of about five thousand dollars a year, or a total of seventeen thousand five hundred forty-one dollars and thirty cents for 1916, 1917, 1918 and 1920. If *one pauper* can be supported out of the poorhouse, without statutory authority so to do, *all of* the paupers of the county can be so supported and there would be no need for a poorhouse which the county is required to keep. See section 349, Code of 1906 (section 3722, Hemingway's Code). The foregoing decisions are in line with the common law on this subject: 30 Cyc. pp. 1130-1131; 30 Cyc. p. 1076; 30 Cyc. pp. 1127, 1141; 11 Cyc. pp. 412, 468, 510, 512, 513.

The doctrine that persons dealing with the board of supervisors must know, and are chargeable with, the statutory limitations on their powers is expressly held in Mississippi in *Croten Bridge Co.* v. *Warren County,* 80 Miss. 214, and thus it appears that there is no power unless special statutory authority is given in the board of supervisors to make appropriations for charitable organizations.

When these authorities are read in connection with the statutory provisions of the Code of 1906, the court will see at a glance that it was never the intention of the legislature to unbridle the board of supervisors in dispensing the county funds, but that every safeguard was intended to be thrown around these funds, so that they might not be spent except as the statute pointed out. See section 349, Code of 1906, also sections 322, 3578, 3579, 3580, 3581, 3574-76. The case of *Polk* v. *Covington*

*County,* 77 Miss. 803, does not militate against our contention.  See also *Reynolds* v. *Board of Supervisors of Alcorn County,* 59 Miss. 132; *Tallahatchie County* v. *Harrison,* 75 Miss. 744.

II.   We will now pass to a discussion of the items sued for in the suit styled *Stokes V. Robertson, State Revenue Agent, etc.,* v. *P. M. Harding et al.*   A.   The board of supervisors of Warren county on September 6, 1912, adopted chapter 258, Laws of 1912, as the method of working public roads of said county, as provided by said chapter 258. After suit brought in this case August 1, 1921, said Harding board attempted to adopt sections 257 and 258, and acting under this chapter, the board as constituted on the first Monday of January, 1920, of which E. S. Martin was not then a member, on May 8, 1920, employed J. E. Gorman to act as general foreman of the Warren county dirt roads at a salary of two hundred twenty-five dollars per month, payable monthly, said employment to commence June 1, 1920. This employment of Gorman is settled by the court in *Flurry* v. *Jackson County,* 100 So. 279, as being illegal. The question, therefore, is, Was not Gorman a *"road commissioner"* under the Acts of 1912, chapter 258, page 326, *supra?* We insist that he was, because he performed the duties that the statute required the road commissioner to do. If Gorman was not *"road commissioner,"* then they had no right to employ him *at all.* As a road commissioner he was only entitled to five dollars per day under this particular act. He was paid two hundred twenty-five dollars per month or two thousand seven hundred dollars a year, and received two thousand nine hundred twenty-five dollars from the public treasury of Warren county up to July 1, 1921.   We refer the court to *Andrews* v. *Covington County,* 69 Miss. 740; *Roane* v. *Matthews,* 75 Miss. 94; *Howe* v. *State,* 53 Miss. 69; *Jefferson County* v. *Grafton,* 74 Miss. 435; *West Carroll* v. *Gaddis,* 34 L. Ann. 928; *Com.* v. *Rush,* 14 Pa. St.

186; *City of Alton* v. *Ill. Trans. Co.,* 52 Am. Dec. 479, and notes at pp. 486-7; *Adams* v. *First Nat'l Bank of Greenwood,* 103 Miss. p. 744, 60 So. 770; *Craft* v. *DeSoto County,* 79 Miss. 611; *Board of Supervisors of Greene County* v. *Snellgrove,* 83 Miss. 898; *Johnson* v. *Yazoo County,* 113 Miss. 435, 74 So. 321.

Since this allowance to Mr. Gorman was a clear excess of authority, if not void *in toto* by his failure to give the bond required by the statute, the allowance was void and was not charged against the county in the first instance, and, therefore, could not be made legal by making the allowance. If the allowance is not a proper charge against the county, the effort of the board of supervisors to make the allowance gives it no life, and it continues to be an appropriation not authorized by law. .

B. *Gorman's automobile.* No authority can be pointed to whereby the board was authorized to furnish him *transportation.* The automobile bought for Gorman was not a part of any road machinery, but a mere gift to this employee to ride around in.

C. *O'Connor, Mallett, et al. allowances.* The bill also sues for the allowances made to O'Connor, Mallett, Roy Powell, C. L. and L. T. Barbour, together with the foreman on the road work, amounting to three thousand two hundred eighty-two dollars and sixty-seven cents. These were not road hands as mentioned in the statute. They were practically assistants to Mr. Gorman, men to take his place if he should go hunting or fishing, at an expense of two hundred twenty-five dollars a month to the taxpayers of the county.

D. *The bond issue of Warren county.* The requirements of the statute chapter 176, Laws of 1914, in reference to the issuance of these bonds were not complied with although said requirements were mandatory and conditions precedent to the use of any money arising from said bond sales.

We have already shown that the board of supervisors will be strictly limited to the authority granted by the

statute, but this chapter 176, Laws of 1914 and the same section of the Laws of 1920, chapter 277, page 393, sections 5 and 6 being identical, were construed in *Ellis* v. *Tillman,* 125 Miss. at page 678, 88 So. 281. In this case they undertook to correct the failure to do the acts required by the statute after the suit was brought and took the position that the statute was directory. We call the court's special attention to the definition of when a statute is directory as set forth in *Koch* v. *Bridges,* 45 Miss. 258, 260, by Chief Justice PEYTON, which is set forth in the opinion in *Ellis* v. *Tillman.*

E. *Garage.* These mandatory provisions of the law in reference to the disposition of this bond money were absolutely ignored. It is admitted this board of supervisors permitted these highway commissioners to pay out of this bond money three thousand seven hundred fifty dollars for three acres of land charged in the bill and admitted in the answer. It is admitted in the answer in the Harding suit that they allowed them to pay out of this bond money before *these precedent steps had been taken,* twelve thousand four hundred seventy-one dollars and thirty-five cents, admitted in Harding suit, all of which sum except five hundred eighty-one dollars and thirty-five cents was dissipated by the board which was in office during the year 1920.

The advertisement by the highway commissioners called for the erection of a garage *"as a road district"* and the contract made with Mr. H. H. Havis for the erection of this garage was made with him as a "road district." The county was to furnish all material of every kind. It was a "cost plus" contract of war time invention. . Can the court imagine a more studied purpose to evade the plain provisions of this law in order to get their hands on this *bond money?* Whoever heard of a garage being called a "road district?" It is but a repetition of human nature that whenever these bond issues are made and sold and the money in the treasury, every covetous man in the country is racking his brain to see

how he can get some of the money. They remind me of pigs trotting around a corn crib, squealing every time their feet hit the ground, for they want some corn.

F. *Gravel.* It was also shown by Maj. FitzHugh that he bought gravel with this bond money, which gravel item is sued for in the bill, amounting to five thousand one hundred eighty-eight dollars in one item, and the proof shows another item of gravel that these commissioners spent this bond money for.

We call the court's attention to the facts in reference to this gravel item. The proof shows that this gravel was bought by these highway commissioners, composed of T. A. Helgason, George Williamson and Alex Fitz-Hugh from the Success Sand & Gravel Co. of Vicksburg. We offered in evidence the charter, as the court will remember, of this Success Sand & Gravel Co. The charter members of this company were J. M. Dutton, George Williamson and John Brunini. It was shown in the evidence that Mr. Brunini, a charter member of the Success Sand & Gravel Co. was the same gentleman representing the defendants. It was shown in the evidence by Mr. Sherard, chancery clerk, that George Williamson, a charter member of the Success Sand & Gravel Co., was the same George Williamson who was highway commissioner acting with Helgason and FitzHugh. These commissioners, therefore, bought this gravel from the Success Sand & Gravel Co., of which one of the commissioners; to-wit, George Williamson, was a stockholder and charter member. T. A. Helgason was a director in the First National Bank, which bank was the county depository.

Independent of the law that condemned this transaction because the mandatory precedent steps had not been taken, as held in *Ellis* v. *Tillman,* 125 Miss. 678, *supra,* to entitle these highway commissioners to deal with this bond money at all, we shall undertake to show that the purchase of this gravel by the highway commissioners from one of their own body, who was a stockholder in the Success Sand & Gravel Co., which sold the

gravel, was void under the law. It was against public policy to allow George Williamson, a member of this highway commission, to buy. gravel from himself and pay for it with the county funds. It is expressly held in this state that the agent of an insurance company, who is a member of a corporation cannot issue a valid policy of insurance to the corporation of which he is a member. *Greenwood Ice Co.* v. *Ins. Co.*, 72 Miss. 46. In *Wildberger* v. *Hartford Ins. Co.*, 72 Miss. 338, the supreme court of Mississippi held that without ratification by the insurer, a policy issued by its local agent to himself, insuring a stock of goods held by him as receiver, is void. See also *Riverside Development Co.* v. *Hartford Ins. Co.*, 105 Miss. 184; *Securities Co.* v. *State*, 91 Miss. 195; *State* v. *Standard Oil Co.*, 49 O. St. 137, 30 N. E. 279; 15 L. R. A. 145, 34 Am. St. Rpts. 541.

G. *Gasoline and oil purchases.* The bill next charges that gasoline and oil were bought without competitive bidding as required by chapter 258, Laws of 1912, and amended in the Laws of 1920, as we have set forth, and that seven thousand three hundred seventy-four dollars and thirty-five cents was spent for gasoline by the 1920 board of supervisors and three thousand four hundred eighteen dollars and twenty-nine cents was spent for gasoline and oil by the 1921 board of supervisors. These purchases were in clear violation of law under the Acts of 1914, page 274, and if that statute is to have any effect whatever these allowances were illegal and not authorized by law, and the board of supervisors are liable to refund this money to the county.

H. *Automobile for J. H. Culkin, five hundred eighty-two dollars and fifty-five cents.* We submit that this automobile purchase was indefensible and we submit to the court whether or not it does not come within the language of Judge Campbell in *State* v. *Howe*, as a "swindle" of the county.

.The court will remember the testimony of Mr. Culkin about this automobile which is so incredible that it is amusing. He stated on the witness stand that he did not

know anything about this automobile, that he was just informed that an automobile was at his disposal, and we feel sure that he is still riding in this taxpayers' automobile, which is as perfect a violation of the law as ever was conducted by any board of trustees, or agents of the county, whichever the court may term these supervisors to be. There can be no defense of this automobile purchase, no statute can be pointed to, no effort to defend it was made in the argument of counsel. If this automobile purchase could for one moment be upheld, then the board of supervisors could buy the circuit clerk an automobile for traveling over the county to register the voters; it could buy the chancery clerk an automobile to travel over the county in trying to enforce the law; it could buy the demonstrating agent an automobile; it has bought the road foreman an automobile; and the road engineer an automobile; and we see no reason why, if this is the law, it could not buy each one of the highway commissioners an automobile, and probably one for each member of the board of supervisors to use attending meetings of the board.

I. *Allowance to Mr. W. I. McKay, three hundred dollars.* The next item sued for in the bill is the allowance to Mr. W. I. McKay, attorney for the highway commissioners, FitzHugh, Helgason and Williamson. This bill was paid out of the bond money to Mr. McKay and is sued for in this suit on the ground that Mr. McKay had nothing in the world to do with the issuance of the bonds provided for by chapter 176, Laws of 1914—"It is the duty of the board of supervisors to issue the bonds."

J. *Allowance for E. S. Martin.* In the warrants and allowances sued for in this case, will be found warrant No. 1842 paid to E. S. Martin, *a member of the board at the time,* amounting to eighty-four dollars and thirty-five cents and "*OK'd by Culkin.*" It was shown in the proof that when this eighty-four dollar and thirty-five cent warrant was allowed to Mr. Martin, it was during the year 1919 while he was a member of the board, and another sixty-three dollar item was paid him in

August, 1920, while he was not a member of the board, but within one year from the time that he ceased to be such member. This allowance was made in the face of the constitution of Mississippi, section 109 and Section 1305, Code of 1906, which makes it a criminal offense for such officer to be so interested in any contract with any county, city or town, or within one year after the expiration of such term, and on conviction thereof shall be punished, etc. See also, section 364, Code of 1906.

*Conclusion.* The effort to have this board escape on the idea that it is a court is not sound, for the reason that the only judicial function that a board of supervisors performs is in recording on its minutes the facts that give it jurisdiction to deal with a particular subject-matter, as was expressly held in *Johnson* v. *Yazoo County,* 113 Miss. 435, 74 So. 321.

A great lesson will be taught these members of the board of supervisors by the decision of this case fixing the limits of their authority, for the public is entitled to have them understand that these public moneys are not to be spent at their mere discretion, that they must put their fingers on the law that authorizes every expenditure out of the public treasury.

*T. C. Catchings, Brunini & Hirsch, Anderson, Vollor & Kelly* and *Hirsch, Dent & Landau,* for appellees.

I. Consider the nature, under the constitution and laws, of the board of supervisors of the state. Section 1, article 1, Mississippi constitution of 1890. Article 6 of the constitution establishes a judiciary, providing for a supreme court, a chancery court, a circuit court, and justices of the peace. By section 170 it will be seen that the boards of supervisors are assigned to the judicial department. It has been decided many times that the boards of supervisors exercise judicial functions and render judgments. *Klein* v. *Board of Supervisors,* 51 Miss. 878; *Klein* v. *Supervisors,* 54 Miss. 258, and 540; *Taylor* v. *Chickasaw County,* 70 Miss. 90; *Tay-*

*lor* v. *Chickasaw County,* 74 Miss. 29; *Keenan* v. *Harkins,* 82 Miss. 709.

In many instances an appeal may be taken from the judgments of the board of supervisors, thus showing conclusively that the legislature understood and acted upon the understanding that the boards of supervisors were really inferior courts. This is made absolutely clear by section 301 of the Code, which gives the board authority to subpoena witnesses and to fine and imprison any person for contempt committed while they are in session. It then gives to the person so fined or imprisoned an appeal to the circuit court, as in other cases, from the order or judgment of the board.

II. Turning now to statutes regulating the board's control over county funds, it will be seen from sections 338, 346, Code of 1906, a liability is declared only where the board appropriated money "to an object not authorized by law." These two sections present the only issue involved in this suit. Sections 1379 and 1386 of the Code of 1871, are precisely similar to these two sections of the Code of 1906. In *Paxton* v. *Baum,* 59 Miss. 536, after referring to the two sections of the Code of 1871, Judge CAMPBELL, speaking for the court, very clearly and definitely gave us the meaning of the statutes. See also *Supervisors* v. *Arrighi,* 54 Miss. 668. Referring again to the opinions of Judges CAMPBELL and CHALMERS, we say that both of them emphasized the fact that supervisors are public officers acting judicially or *quasi*-judicially, and that Judge CHALMERS plainly intimated that a law which would make them personally liable for every erroneous judgment rendered would be unconstitutional.

In *Paxton et al.* v. *Arthur et al.,* 60 Miss. 832, the allegation of the declaration was that the board of supervisors "appropriated out of the treasury of said county divers large sums of money to objects not authorized by law." It will be seen that Judge COOPER carries the doctrine a step further and holds distinctly that if the board believed that the circumstances did exist which would have authorized the appropriations, and made the allow-

ances under an honest, though mistaken, belief of facts, the members would not be personally liable under the statute, but he said that it devolved upon the defendants to plead and prove either the real or apparent existence of such facts. This placing of the burden upon the members was because of the admission by the demurrer unqualifiedly that the allowances were not made under the circumstances named in the statute. His last statement clearly was because of the rule announced in the earlier case of *Paxton* v. *Baum,* that in making appropriations supervisors act in a judicial or *quasi*-judicial capacity. See also *Weissinger et al.* v. *Davis et al.,* 112 Miss. 625.

We respectfully submit that these four cases correctly announce the true construction of our statute and that they exonerate the members of the boards of supervisors from personal liability for any of the appropriations complained of by the state revenue agent. Our statutes were based, beyond a doubt, upon the well-settled doctrine in this state that in allowing claims and making appropriations, the boards of supervisors act in a judicial or *quasi*-judicial capacity. *Henry* v. *Commonwealth,* (Ky.), 103 So. 371; *State* v. *Diemer* (Mo.), 164 S. W. 517; *County Court of Tyler County* v. *Duty et al.* (W. Va.), 87 S. E. 256; *Avery et al.* v. *Tima County,* (Ariz.), 60 Pac. 702; *Land Log & Lumber Co.* v. *McIntyre* (Wis.), 75 N. W. 969.

In addition to the pronouncement in the several cases above referred to, our own statutes recognize the *quasi*-judicial functions of the board of supervisors, which make it in many particulars a real court. For illustration, appeals may be taken from the findings of the board. In many sections of the Code its findings are designated as judgments. It has also been ruled that after the adjournment of a session of the board its findings are conclusive, unless reversed on appeal, so that the board itself cannot rescind or recall them.

The board also has many legislative functions. *Ex parte Louis Fritz,* 86 Miss. 221; *Jefferson County* v. *Grafton,* 74 Miss. 442; *Allgood* v. *Hill,* 54 Miss. 666.

Of course, in determining what legislative powers it possesses, and what implied powers it possesses, the board necessarily must exercise its discretion. And it is not the law that its members are personally liable if this discretion is improperly exercised. If the object in view is one authorized by law, failure to exercise proper discretion in determining what may be its powers, either expressed or implied, does not impose personal liability upon its members. If the legislature of the state should pass a law beyond its power, which often happens, it would never occur to any sensible man that the members of the legislature voting for such law made themselves personally liable. The same rule applies to all minor legislative bodies as well.

An examination of the cases cited by Mr. Armistead will clearly indicate the dividing line between his view of the law applicable here and the view entertained by us. Let us make some application of these several known principles of law.

A. *The King's Daughters and the paupers.* The court will take judicial notice of the fact that the King's Daughters are engaged in much work that is altogether aside from furnishing relief to poor people. It is alleged that beginning with 1916 and coming on down through 1921, the board from time to time had made allowances to the King's Daughters, which in the aggregate would exceed twenty thousand dollars and it is for the excess over twenty thousand dollars that liability of the board is asserted. By section 307, Code of 1906, which defines the general jurisdiction and the powers of the board of supervisors, it is declared: "They shall have jurisdiction over the subject of paupers." See also section 3566, Code of 1906. The minutes of the board show that, beginning with January, 1916, and coming down to September, 1921, no allowance whatever was made to the King's Daughters, in pursuance to the two statutes above quoted, authorizing donations of ten thousand dollars each. These references by the board conclusively

show that they were not making these allowances at all by virtue of the authority to appropriate ten thousand dollars under the Laws of 1908 and 1912, but that they were exercising their general jurisdiction in dealing with paupers or poor people. The sections quoted show conclusively that dealing with the relief and support of the poor is an object expressly authorized by law, and the board of supervisors in making 'these allowances was making allowances for an object authorized by law, and by the very terms of our statutes they are not personally liable.

While the law requires that before the warrant is issued, there shall be a reference on the minutes to the authority under which it is intended to be issued, yet a reference to the wrong statute, supposing there was a statute under which the warrant might lawfully have been issued, does not make the appropriation one not authorized by law. The question for the court to determine is not whether the board of supervisors referred to the proper statutes in making allowances and ordering the issuances of warrants, but whether the allowances were made for objects authorized by law, and an error in referring to the statute does not alter the question as to whether the objects were ones authorized by law. *Polk* v. *Covington County,* 77 Miss. 805.

We submit that it is not essential under section 3578, as brought forward in the Laws of 1912, that the board shall provide a poorhouse or county home. It if does do so, then the sundry provisions of our statute regulate the manner of dealing with the poorhouse or county home, but they do not in any wise conflict with or subtract from the general jurisdiction and power necessary and proper for the relief and support of the poor of the county. The supervisors, notwithstanding they may have provided a poorhouse or county home, still have the general jurisdiction to furnish relief to the poor of the county. *County of Posey* v. *Harlem* (Ind.), 8 N. E. 913, is instructive.

This is a complete answer to the objection made by Mr. Armistead to sums expended by the board in furnishing transportation to poor persons from this county to their homes.

B. *As to the employment of J. E. Gorman as road foreman.* The bill alleges that on September 6, 1912, the board of supervisors entered an order adopting chapter 258, Laws of 1912, as a method of working the roads. It will be seen that chapter 257, Laws of 1912, imposes no limitation whatever as to the compensation which the supervisors may give the commissioner. It is evident that the board of supervisors intended to come under chapter 257 and not under chapter 258, which had been repealed, as stated. Otherwise, the order purporting to place the county under chapter 258 would be null and void, as there was no such law as chapter 258. See *Love* v. *Yazoo County,* 111 Miss. 802; *Ellis* v. *Donnell,* 112 Miss. 131. These opinions make it perfectly clear that chapter 257 was the law in force after its adoption, and not chapter 258 and that this chapter 257 was continued by the amendatory chapter 177 of the Laws of 1916.

If, however, this argument be deemed unsound and it should be held that chapter 276 of the Laws of 1920 was not repealed by chapter 279, and that it was in force when Mr. Gorman was employed, let us see how the case would stand. By section 5 of that chapter, the compensation of the road commissioner was not to exceed five dollars per day. It seems to be manifest, however, that the board might have done the work on the roads without employing a road commissioner. The board did not employ Mr. Gorman as a road commissioner and it is only argument and inference that the bill attempts to maintain that while he was called a road foreman, he was in fact the road commissioner contemplated by the act of the legislature. It was not necessary to give Mr. Gorman any title. He was simply a workman and worked with his own hands. His duties were

similar to those of a section foreman on a railroad. When the board wanted work done on a road, he was sent to do it and supervise it. The fact is that Mr. Gorman was not the road commissioner contemplated by the statute, but he was simply an employee of the board to do the work which *they were doing themselves under their own direction.* This being so, they had a perfect right to fix Mr. Gorman's compensation as they pleased and also to employ such other persons as they pleased and to fix their compensation. The whole matter of road improvement was within their discretion.

The board was also authorized in its discretion to purchase an automobile to be used by the road foreman, which automobile was not a pleasure car, but a truck. It came fully within the definition of implements, materials, or teams. If the board could have bought a wagon and teams to haul it, to be used by Mr. Gorman, it would seem that of necessity it could purchase an automobile or truck, which performs the same function. And it was perfectly entitled to purchase gasoline with which to operate this truck, just as it would have been authorized to purchase feed for horses and mules, if instead of purchasing an automobile truck, it had purchased a wagon and animals to haul it.

Complaint is also made that the board audited and directed warrants to be issued to cover salary of an assistant foreman, and of J. M. O'Connor, W. E. Mallett, Roy Powell, C. L. and L. T. Barbour. As a matter of fact, all these men were simply employees engaged in the work of road construction and working under the direction of Mr. Gorman. The board was authorized under the law to employ labor and to do any and all things necessary to be done to work and construct the public roads. Certainly, the employment of these men to assist Mr. Gorman in his work of road construction was even technically within the power of the board.

C. *Purchase of a lot upon which the alleged garage was erected and the erection of the garage itself.* Chapter 242, Laws of 1920, expressly authorizes the board of

supervisors to acquire ground and buildings, or to erect them, to be used in storing and preserving road machinery, trucks, teams, or other county property. This act certainly applies. Chapter 266, Laws of 1920, authorizes the supervisors to establish stations, erect barns, sheds and other necessary buildings for the working of the public roads. These two statutes, even if not applicable here, by their terms simply and expressly confer a power which the supervisors necessarily had by implication. They show that the purchase of the ground and the erection of the building was for a purpose deemed by the legislature suitable and proper.

D. *Tornado insurance.* Complaint is made that the board of supervisors, for the year 1920, paid for tornado insurance upon buildings belonging to the county, and a list of the premiums so paid is set out in the bill. It is claimed that this allowance was in contravention of section 319, Code of 1906, which section merely authorizes boards of supervisors to insure public property against loss by fire. The board would have undoubtedly had the authority without that section to protect public buildings by fire insurance. It would be singular, indeed, that while all private persons may protect, and as a matter of fact do, in almost every instance, private property from loss, by insurance against fire, and of late years against loss by tornado, that the board of supervisors acting for all the people of the county could not so protect the people's property. The board has implied powers necessary to enable it to discharge its duties and to protect the public.

E. *Vacation claims.* Complaint is made that the board audited and allowed a long list of claims, which are set out in the bill, which claims, it is alleged, were based upon contracts made in vacation by the several members of the board. Many of these items were intended to be used in road work. Some of them related to school buildings. One of them was for land upon which to construct a school. Others were for repairs to school buildings; others to school wagons; one for pianos fur-

nished a school; others for lighting apparatus for schools, etc., etc. They were all, as will be shown, for purposes authorized by law; and even if there should be irregularity or technical illegality in appropriating for the payment of these claims, there is no personal liability under the principles hereinbefore set out.

F. *Bond attorney's fees.* As to the compensation paid to Mr. McKay as attorney, it is sufficient to say that if his services were accepted by the board in preparation of bonds, etc., he was employed by the board and they clearly had the right, notwithstanding there was a district attorney and county attorney, to employ special counsel.

G. *The automobile furnished Mr. Culkin, county superintendent.* The money expended to procure this automobile to be used by the county superintendent was certainly for an object authorized by law. It cannot be denied that it is highly beneficial to the county schools that Mr. Culkin should be furnished with facilities for rapidly traversing the county and visiting the schools. It was not a personal donation to him in any sense of the word. The purpose was to benefit the schools of the county by enabling the superintendent to visit them more frequently and with ease.

H. *The expenses allowed Dr. Myers, the health officer.* See section 307, Code of 1906. General authority was given to the board over all matters of county police. See *Moore* v. *State,* 48 Miss. 161. In defraying the expenses of Dr. Myers to attend this conference they certainly were acting within the authority conferred on them in the words "all other matters of county police." It was a wise expenditure of a small sum of money and was intended for the benefit of the people of this county.

*The Act of March* 12, 1914. Mr. Armistead argued with great earnestness that the effect of this act was to create a state of law entirely different from that which had theretofore prevailed, and that consequently the decisions of our court to which we have alluded were no long-

er applicable. The Act of 1914 made no alteration in the law so far as the legal questions we have discussed are concerned. Moreover, the section of our code with regard to the individual liability of members is brought forward in Hemingway's Code, just as the Act of March 12, 1914, is, so that between them there is no question of seniority.

Also the case of *Brown* v. *Reeves,* 92 So. 825, which confirmed *Paxton* v. *Baum,* and the ruling therein made, was dealing with the action of the board of supervisors of Harrison county for the years 1916, 1917 and 1918, thus showing conclusively that the Act of March 12, 1914, had in no wise altered the situation.

Argued orally by *A. A. Armistead* for appellant, and *John Brunini* and *Thos. C. Catchings,* for appellees.

PER CURIAM.

These two suits were argued and submitted together, and are controlled by the same principles.

The state revenue agent brought a suit against the appellees in each case as members of the board of supervisors of Warren county, Miss. The appellees in one case were members of the board of supervisors from 1916 to 1920, and in the other case appellees were members of the board of supervisors from 1920 to 1924.

The suit involved the liability for allowances by the board of supervisors of various claims against the county. The validity of the allowances in many of the claims is based upon the failure of the board of supervisors to advertise for bidders, and in letting the contracts for the public work involved in the manner required by the statutes; it being alleged that many of these items involved contracts where the law required notice to be published to the bidders and the acceptance of the lowest and best bid to be submitted for such contracts. Other items in the bill, it is alleged, were paid by the board of supervisors where there was no legal authority to justify such

allowances, and the revenue agent sued the members of the board of supervisors on their several bonds to recover the various amounts so allowed.

The decree of the court below was for the defendants, members of the board of supervisors, generally, but a small amount of the claim sued for was allowed in the decree to the revenue agent. The record before us is very voluminous, and it will be impossible to set out in detail all of the different items and accounts sued for. Wherever necessary for a proper understanding of the opinion, the claims and allowances will be referred to.

The defendants relied largely upon the case of *Paxton* v. *Baum,* 59 Miss. 531, construing section 346 of the Code of 1906, as it existed in the statutes at the time the cause of action there involved, arose. The appellant re- lies largely upon section 293 of the Code of 1906, section 346 of the Code of 1906, section 361 of the Code of 1906, section 369 of the Code of 1906, section 170 of the Constitution of 1890, section 341 of the Code of 1906, and chapter 142, page 184, and chapter 206, page 274, Laws of 1914, amending chapter 123 of the Laws of 1912, being sections 6660 and 6661 of Hemingway's Code. These sections will be referred to in this opinion hereafter.

In *Paxton* v. *Baum,* 59 Miss. 531, this court held that members of the board of supervisors are not liable on their bonds for an allowance made by the board of supervisors, where the allowance was authorized by law, although the board disregarded the provisions of the statute in making such allowance. It was there held that the board, in making an allowance against the county, was acting in a judicial capacity, and the members of the board were not liable on their bonds for an error or mistake if the money went to an object to which it could be lawfully applied, but held in that case that this rule did not apply where the members were making allowances to themselves for compensation, and the board could not act judicially where it was dealing with its own members, but that in other respects the members of the board were protected from personal liability and liability

142 Miss.—12.

on their bonds. In the course of the opinion, the court there said:

"The question is as to the interpretation of the expression 'object not authorized by law.' The objects to which money in the county treasury may be appropriated are designated by law, and it is not legally appropriable to any other purposes. If it is appropriated by the board of supervisors to some other object than is authorized by law, members are liable personally for it, unless they voted against such appropriation. It is for money appropriated to something for which the law does not permit it to be appropriated at all, in any way or under any circumstances, that. members are personally liable. It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally. It is what the money is appropriated to, and not how it is applied, that furnishes the test of personal liability for it. 'Object' signifies the thing aimed at, the end sought to be accomplished. If this is not the true interpretation of the language mentioned, members of the boards of supervisors would be liable personally for every mistake or error of judgment or of information as to facts whereby money was appropriated even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending it. Either members of the boards of supervisors are personally liable for every appropriation not made in strict conformity to law, or they are not liable except for a diversion of public money from authorized objects and its appropriation to such as are not authorized. The objects to which the boards may appropriate money are designated by law, and may be known to them; and, in all cases of doubt, they may resolve the doubt against the appropriation, and avoid risk of liability; and it may be supposed that for appropriations to objects not authorized by law, it was intended to make members of the boards of supervisors personally liable. But, in view of the well-settled rule

of the common law that for errors or mistakes a public officer acting judicially or *quasi*-judicially is not liable, it could not have been the purpose of the legislature to make members of boards of supervisors personally liable for errors or mistakes as to how to act in matters committed to such boards by law, and as to objects for which an appropriation of money is authorized to be made by them. It is when they disregard the law as to the objects to which it has devoted the public money, and divert it to some object to which the law has not devoted it, that personal liability attaches.''

The opinion discloses that the bond of the supervisors under review in that case was provided for in chapter 53, pp. 46, 47, Laws of 1876, in which chapter it was provided that it shall be the duty of all members of the board of supervisors in the several counties of the state before entering upon the duties of the office to execute a bond with good and sufficient freehold security in a sum equal to one and one-half per cent. of the amount of all the taxes assessed and levied upon the county the last year preceding the qualification of such board. It also provides that such bond shall be conditioned as the bonds of other county officers who are required by law to give bonds, and approved as other county officers' bonds, and the remedies on which shall be as provided by law on other official bonds. By section 309, Code of 1871, in force at the time of the decision in *Paxton* v. *Baum,* it was provided:

''All officers of this state required to give bond for the faithful discharge of the duties of their respective offices, shall, in addition to the special requirements in any statute pertaining to the office, give bond in the following form:

'' 'Whereas, the above bounden A B, was duly elected (or appointed) to the office of ——, on the —— day of ——, for the term of ——, years from the —— day of ——; wherefore the condition of this obligation is such, that if A B shall faithfully perform and discharge all the duties of the said office of ——, and all acts and

things required by law, or incident to the said office, during his continuance therein, then the above obligation to be void, otherwise to remain in full force and virtue. But this provision shall be considered as directory only; and a failure to observe the form herein prescribed shall not vitiate any official bond; and all official bonds shall be valid and binding, in whatever form they may be taken, except so far as they may be conditioned for the performance of acts in violation of the laws or policy of the state.' "

It will be seen from reading this section that no specific liability was imposed. It provided that the officer should faithfully perform and discharge all the duties of the office which he assumed. By section 311, Code of 1871, it was provided that such bond might be put in suit in the name of the state for the use and benefit of any person injured by a breach thereof. By section 1752, Code of 1871, the assessor and collector, with their sureties, were liable and bound to pay on their bonds to the county or state the full amount of all sums lost to the state or county by the failure or neglect of such officers to assess or collect taxes.

By sections 1388 and 1389, Code of 1871, it is provided how the board of supervisors shall let contracts for public work, and it is provided in the concluding clause of section 1389, but "all such contracts shall be made and approved by the board in open session." By section 1394, Code of 1871, it is provided that no board of supervisors shall hereafter empower one or more members of the board or a person to make or let contracts in vacation or during the recess of the board, but all such shall be made or approved in open session; and that it shall be the duty of the board to accept the lowest responsible bid, and concludes, "and all contracts made in violation of any of the provisions of this act shall be void." This last section is brought forward in succeeding Codes, being section 2183, Code of 1880; section 344, Code of 1892; section 369, Code of 1906; section 3742, Hemingway's Code.

Section 293, Code of 1906 (section 3665, Hemingway's Code), reads as follows:

"Each member of the board of supervisors, before entering upon the duties of his office, shall execute a bond with sufficient sureties, but neither of them shall be surety for the other, payable, conditioned, and approved as bonds of county officers are required to be, in a penalty equal to five per centum of the sum of all the state and county taxes shown by the assessment rolls and the levies to have been collectible in the county for the year immediately preceding the commencement of the term of office of said member; and such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the county for any injury by such illegal act of such member; or any taxpayer of the county may sue on such bond, for the use of the county, for such injury, and such taxpayer shall be liable for all costs in case his suit shall fail."

Section 338, Code of 1906 (section 3711, Hemingway's Code), provides that the board of supervisors shall direct the appropriation of money that may come into the county treasury, but shall not appropriate the sum to an object not authorized by law.

By section 343, Code of 1906 (section 3716, Hemingway's Code), it is provided that it shall be unlawful for the board of supervisors to allow a greater sum on any account, claim, or demand against the county, etc., and provides that, in illegal allowances by such board, it may be inquired into by the proper tribunal upon legal proceedings for that purpose whenever such matter may come into question.

Section 344, Code of 1906 (section 3717, Hemingway's Code), provides that if any person shall claim or receive from the board of supervisors of the county a fee or compensation not authorized by law, or if any member of such board shall knowingly vote for the payment of any such unauthorized claim or any appropriation not

authorized by law, he shall be subject to indictment and conviction and for fine and imprisonment.

Section 346, Code of 1906 (section 3719, Hemingway's Code), reads as follows:

"If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liabe for costs in such case."

Section 361, Code of 1906 (section 3734, Hemingway's Code), reads as follows:

"All contracts by boards of supervisors for any public work not otherwise specifically provided for, where the amount of the contract shall exceed fifty dollars, shall be made upon at least three weeks public notice by advertisement in a public newspaper of the county, if there be one, and if not, by posting written or printed notices at the courthouse door and in each supervisor's district of the county, which notice shall distinctly state the thing to be done, and invite sealed proposals, to be filed with the clerk, to do the work, or such contract may be let out at the door of the courthouse at public outcry, as the board shall direct; and in all cases, before the notice shall be published or posted, the plans and specifications for the work shall be filed with the clerk and there remain; and the board shall award the contract to the lowest bidder, who will comply with the terms imposed by such board, and enter into bond with sufficient sureties, to be approved by the board, in such penalty as may be fixed by such board, but in no case to be less than the contract price, conditioned for the prompt, proper and efficient performance of the contract. The principal, or at least one surety on the bond, shall be a resident of the county in which the contract is let."

Section 363, Code of 1906 (section 3736, Hemingway's Code), provides for inspection of work before paid for where the contract price exceeds two hundred dollars and is less than five thousand dollars, and for payment as the work progresses on inspection, and estimates at a named percentage of the contract price not to exceed the value of the work performed under the contract, and in no event to exceed eighty-five per cent. of the total contract price until completion and inspection of the work. Section 364, Code of 1906 (section 3737, Hemingway's Code), provides that members of the board of supervisors shall not be interested in any contract let by the board.

Section 369, Code of 1906 (section 3742, Hemingway's Code), reads as follows:

"A board of supervisors shall not empower or authorize any one or more members of such board, or other person, to let or make contract for the building or erection of public works of any description, or for working public roads, in vacation or during the recess of said board; except in cases of emergency when a bridge has been washed away or damaged by floods that cannot be restored or repaired by the road hands within two days; but all other contracts shall be made and approved by said board in open session; and it shall be the duty of the board of supervisors to accept the lowest responsible bid for the erection or construction of all public buildings, bridges or public works, or for the execution of any other contract; and any bidder will be deemed responsible who will enter into bond, with sufficient sureties, according to law, to be approved by said board, in double the amount of the bids made by such bidder for the prompt, proper and efficient performance of his contract; and all contracts made in violation of any of the provisions of law shall be void."

Section 6660, Hemingway's Code (chapter 206, Laws of 1914), reads as follows:

"That all boards of supervisors, boards of school trustees of the common schools and all boards of mayor

and aldermen, whether operating under a special charter or code chapter, shall purchase their supplies for public works, and for public buildings, and for public construction, upon competitive bids, letting contracts therefor for periods of not more than twelve months in advance; and no individual member of any such board shall, in any case, purchase any such supplies, nor shall any such board ratify any purchases made by any individual member thereof or pay for the same out of public funds; provided, that in case of emergency any such purchase, not exceeding one hundred dollars, may be made by an individual member without competitive bidding, after having submitted an itemized statement of the supplies needed, to at least two dealers in the supplies sought, and shall purchase from the lowest bidder; and provided, further, that the individual member so purchasing shall approve the bill presented therefor, certifying in writing thereon to whom such itemized statement was so submitted and the sum bid by the dealers not bought of it.''

Judges McGowen, Cook, and Ethridge are of the opinion that section 293, Code of 1906 (section 3665, Hemingway's Code), construed with section 346, Code of 1906 (section 3719, Hemingway's Code), and the other statutes above set out, make the board of supervisors liable on their bonds for any damage flowing to the county from the failure to comply strictly with the provisions of the law governing the board of supervisors, and that where the law makes the contract void for failure to comply with the law, such failure, coupled with such allowance in violation of the restriction imposed by law, constitutes illegal acts within the meaning of section 293, Code of 1906 (section 3665, Hemingway's Code); and inasmuch as this section has been enacted since the decision of *Paxton* v. *Baum, supra,* that the principle of that case is abrogated in so far as it holds that there is no liability on the bonds of the board of supervisors for illegal allowances, provided the money goes to an object authorized by law. In their opinion, the liability of a member of the board on his bond extends to all in-

juries resulting from illegal acts of the board of supervisors, even though the money may go to the object to which it is appropriated.

Judges ANDERSON, HOLDEN, and SMITH, are of the opinion that section 293, Code of 1906 (section 3665, Hemingway's Code), construed with section 346, Code of 1906 (section 3719, Hemingway's Code), does not extend the liability of the board of supervisors on their bond, and that the doctrine announced in *Paxton* v. *Baum,* 59 Miss. 531, is still the law; that it has not been changed by the statutes hereinbefore referred to. As the chancellor below held to the view entertained by Judges ANDERSON, HOLDEN, and SMITH, the judgment of the chancellor will be affirmed as to the allowances which were authorized by law even though the contracts were not made in accordance with the statute, and as to all such items the judgment of the chancellor is affirmed by judgment of this court notwithstanding the views of the other judges. These items make up a large part of the claim sued for in the present case, and were disallowed by the chancellor, and which the majority of the court thinks should not have been allowed to the revenue agent suing for the county. A majority of the court thinks that some of the allowances made by the board and approved by the chancellor are not authorized by law. One of the items sued for, which it is contended is unauthorized by law, is premiums paid for insurance policies on tornado insurance amounting to two hundred forty-five dollars and eighty cents. It is contended by the appellees, and the chancellor so held, that under the general jurisdiction section of the Code, section 307, Code of 1906 (section 3680, Hemingway's Code), giving the board of supervisors full jurisdiction over levees, highways, and various bridges "and all other matters of county police," that the board had jurisdiction to insure the property of the county against damage and loss from tornadoes.

By section 319, Code of 1906 (section 3692, Hemingway's Code), it is provided:

"The board of supervisors may have the courthouse, jail, and other buildings of the county, the furniture thereof, and the books of the county insured against loss by fire, and the cost thereof shall be paid out of the county treasury."

This section, in the opinion of the majority of the court, is the limit of the authority of the board of supervisors to insure the property of the county, and that the naming of loss by fire precludes losses from other sources; and in the absence of a specific statute the board of supervisors have not the authority to carry insurance. Insurance is made up of the risks and the necessary expenses and profits of an insurance company. When the county insures its property, it does not only insure the risk that it runs in case of loss of property or the value thereof, but also includes the overhead expenses and profits of the insurance business. The county is solvent, and in the absence of legislative authority it cannot incur this obligation or liability. We do not think the authority to carry tornado insurance can be implied from either of the sections referred to, and we hold that the members of the board of supervisors in paying out the county's money for this purpose was appropriating it to an object not authorized by law; and therefore the members are liable on their bonds for the amount so paid.

It is next contended that the suit against the board of supervisors for the amounts allowed themselves in excess of the amount allowed by law is recoverable in this suit. In the case of *Paxton* v. *Baum, supra,* it was held that the board did not act judicially in allowing compensation to themselves, and that therefore they were liable for all excesses paid out to themselves. It further appears that the chancellor allowed more than the board of supervisors were entitled to receive, and judgment as to this item will be reversed and remanded for proper allowance.

It is next contended by the revenue agent that the board of supervisors had no authority for certain allowances made to the King's Daughters of Vicksburg, as the min-

utes of the board of supervisors did not show that such funds were appropriated to any object authorized by law, and that the board of supervisors had no specific authority to allow such sums. These sums were in addition to certain sums authorized to be paid to them by statute as a donation. The board of supervisors not only appropriated the sums authorized by chapter 265, Laws of 1908, and by Acts of 1912, page 363, chapter 317, but entered other varied allowances to the said organization known as the ''King's Daughters,''. and that the sums paid in excess of the amount authorized by statute amounted to fourteen thousand nine hundred forty-one dollars and ninety cents. The board of supervisors undertook to defend and justify such allowances on the theory that they were used by the King's Daughters in the relief and support of the poor, and that inasmuch as the statute authorized the board of supervisors to support paupers that these appropriations were to an object authorized by law and fell within the protection of *Paxton* v. *Baum, supra.*

While it is true that under the statutes the board may support paupers at the public expense, still the board is not authorized to pay out public funds to the support of those who do not come within the class of paupers. It is provided in section 3567, Code of 1906 (section 6184, Hemingway's Code), that to entitle any pauper to support by the county he must have been a *bona-fide* resident six months prior to his application for support, and the settlement of the parent or parents shall entitle the children to a settlement. It is provided by section 3574, Code of 1906 (section 6191, Hemingway's Code), that whenever any member of the board of supervisors shall ascertain that there is a pauper in his district probably entitled to relief, it shall be his duty to examine into the pauper's right to support, and if he is satisfied that such pauper has a settlement in his county, and is unable to support himself, or is entitled to be supported or provided for by the county, he shall report the matter to the

board of supervisors and provide him with emergency relief until the board may act. Before a person is entitled to be supported at the public expense, his right thereto must be determined by the proper authorities and the facts adjudicated by some competent authority. This duty rests upon the board of supervisors with certain exceptions, in which temporary relief may be rendered, and the pauper is not entitled to be supported and the funds not authorized to be paid out, until such facts are satisfactorily established by the agency created by law to determine those facts. The board cannot delegate this duty to the King's Daughters, or any other organization or person, as public funds cannot be devoted to a private object or purpose. No persons are entitled to be supported at the public expense except those embraced in the chapter on paupers. To allow money to a private person or organization, to be dispensed according to the will and judgment of such private person, uncontrolled by law, would be to take the taxpayer's property without due process of law contrary to section 14 of the state constitution, and to the Fourteenth Amendment of the constitution of the United States.

By section 3577, Code of 1906 (section 6194, Hemingway's Code), the funds to be used for the relief of paupers are to be raised by an assessment of the board of supervisors and collected as other taxes. Taxes can only be raised and used for public purposes. In *Tallahatchie County* v. *Harrison,* 75 Miss. 744, 23 So. 291, it was held by this court that the board of supervisors had no power to allow a physician's claim for medical services rendered by authority of the member of a board to an indigent sick person, and that it was not proper when the person was never declared a pauper by the board nor that he desired to be so classed and provided for by the county. In view of what we have said, it is wholly immaterial whether the King's Daughters actually paid out the money allowed them to the poor or not. There were no attempts of the board to find that the persons

were, in fact, paupers, and that they came within the class authorized by law to be supported at the public expense. Therefore the judgment of the chancellor as to these claims should be reversed and the cause remanded.

What we have said with reference to the allowances of the King's Daughters applies with equal force to the allowances made to the Ladies of Charity. These allowances were made, according to the proof, for the purpose of buying transportation for poor persons coming into Warren county for treatment at the Charity Hospital, and who did not have the means of paying their expenses back home. There was no adjudication adjudging such person to be a pauper, and no charge made of the expenses so incurred in removing them to the county of their residence. They were clearly not entitled to the public funds, and the board of supervisors cannot appropriate public money for the mere accommodation of individuals even though they may be poor, and even though it may be good economy to remove them from county or city.

It is next contended that the allowances to J. E. Gorman, of two hundred twenty-five dollars per month, to commence June 1, 1920, as general foreman of the Warren county dirt roads, was illegal and unauthorized, and especially that all in excess of five dollars per day was unauthorized. It appears that in 1912 two different acts were passed by the legislature amending chapter 150 of the Laws of 1910. The first of these acts appears in the Laws of 1912 as chapter 258, and was approved on February 24, 1912; the second was approved on March 6, 1912, and appears as chapter 257. Each of these acts amends chapter 150, Laws of 1910, and have somewhat differing details, though each was addressed to the same general scheme, and were later amended and brought forward separately, and were finally merged again in chapter 276, Laws of 1920. The board of supervisors, in adopting this scheme of road work, adopted chapter 258 instead of chapter 257. By chapter 258, Laws of

1912, the board was limited in case a commissioner was employed to five dollars per day for his compensation, and this was limited to actual days employed; whereas chapter 257 did not place any limit upon the board of supervisors as to what they should do for the superintending of the work under that act.

The appellees contend that although the minutes recited the adoption of chapter 258 of the Laws of 1912, the legal effect of such order was to adopt the chapter as it had been amended by chapter 257, and chapter 257 was, in legal effect, an amendment of chapter 258. In other words, each of these acts recited the amendment of chapter 150 of the Laws of 1910, and, as a legal consequence, that the law which really was in force was the latter expression, and that the adoption of chapter 258 was, in legal effect, an adoption of that chapter as amended by chapter 257. The result is that chapter 257 of the Laws of 1912, being the latest expression on the subject, was in force until it was amended by chapter 177, Laws of 1916, and that the law was in force until the 8th day of April, 1916, when the legislature enacted chapter 172 purporting to amend chapter 258 of the Laws of 1912, but in legal effect amended chapter 177, Laws of 1916, enacted on the 21st day of March, 1916, and therefore remaining in force until the 3d day of March, 1920, when the legislature passed chapter 276, Laws of 1920, purporting to amend each of the said acts.

In the case of *Lang* v. *Harrison County,* 114 Miss. 341, 75 So. 126, we considered the effect of these acts, and reached the conclusion that chapter 172 of the Laws of 1916 was the latest expression of the legislature upon the scheme created by chapter 150, Laws of 1910. By this chapter 172, Laws of 1916, the board was authorized to work the public roads of any county or beat thereof by purchase of teams, implements, and material, and employment of labor on public roads, "and may do any and all things necessary to be done to work the roads, as herein provided, but all contracts for material and sup-

plies shall be made on and after competitive bids for same." "The board of supervisors are hereby authorized in their discretion, if they consider it necessary and to the general interest of the county, to employ a competent person to serve as road commissioner, whose compensation shall not exceed five dollars per day for each day served in the actual discharge of his duties as defined by the board of supervisors of each county;" labor for said roads to be employed by the board of supervisors in case there be a commissioner to be employed by him. The provision with reference to the road commissioner is carried forward in chapter 276, Laws of 1920, with a limitation to five dollars for each day served in actual discharge of his duties. We think, therefore, that the employment of Mr. Gorman under the law in force at the time was an employment of the road commissioner, and that the board was limited to five dollars per day in fixing his compensation, and all money in excess of five dollars per day paid on said account was payment of public money to an object not authorized by law, and that the revenue agent should have been allowed to recover the compensation in excess of five dollars per day paid to him by the board.

We think, under the provisions of the law quoted above, that the board may do any and all things necessary, etc., authorize the board of supervisors to furnish the commissioner means of transportation and to pay the expenses necessarily incurred in attending to his duties as road commissioner. His salary could not exceed the amount fixed by law, but it would be necessary where the county is working the roads of the county under this plan to have a number of crews in different parts of the county, for the road commissioner to be in different parts of the county at frequent intervals, and would even require rapid movements, and providing for the expense of the system outside of his salary was proper, and this would include the power to purchase an automobile for his use.

The appellant next contends that the court below erred in refusing to allow him to recover the allowances made to O'Connor, Mallett, Powell, and Barber, who were employed by the board of supervisors, under the above chapter, to look after certain matters in the road working business. It was necessary and proper to have overseers, or superintendents of working crews, and the fact that these persons were employed under Mr. Gorman does not mean that they are doing the work that Gorman is expected to do as road commissioner.

It is next contended that the court erred in refusing to sustain the revenue agent's contention with reference to allowances to road commissioners under chapter 176, Laws of 1914, under which chapter the bond issue of five hundred thousand one hundred dollars was authorized and issued. The fact that the bonds were only for one hundred dollars more than five hundred thousand dollars mentioned, and that this adding one hundred dollars was for the purpose of enabling the commissioner to receive the compensation and expense provided for where the bond issue exceeded five hundred thousand dollars, is a matter over which the court cannot supervise the county authorities. The legislature provided that such expense could be incurred when the bond issue was more than five hundred thousand dollars. The legislature itself drew the line, and it is not for the court to say that the commissioners could not fix the issue, as they did here, so as to bring themselves within the allowances therein authorized. The chancellor's holding as to this item is affirmed.

It is next contended by the revenue agent that he should have recovered the moneys expended in building the garage. By chapter 242, Laws of 1920, the board of supervisors of any county was authorized to acquire grounds and buildings, or erect buildings on grounds owned by the county, to be used by the county in storing and preserving road machinery, trucks, teams, or other county property. The board must be the judge of the

place where this building is to be erected and the character and location of same. The legislature has not restricted their discretion in this regard, and the chancellor will be affirmed as to this matter.

The revenue agent next contends that he should have been allowed to recover five thousand one hundred eighty-eight dollars claimed for the purchase of gravel from the Success Sand & Gravel Company, of Vicksburg, Miss. His contention is that the highway commissioners could not make this contract because he alleges that one of the commissioners was an incorporator of the Success Sand & Gravel Company. His proof as to this fact is that Mr. Williamson, one of the incorporators, who was also one of the highway commissioners, was a member when the board purchased the sand and gravel for the county for the use of the road, and was a corporator, but did not show that he still was such, and contends that he was forbidden by law to be interested in such contracts. The commissioners are agents of the board of supervisors in making these purchases, and it is not suggested that any member of the board of supervisors was interested directly or indirectly in the contract, and the chancellor was correct in holding that the revenue agent could not collect this item on the facts disclosed in the record.

It is next contended that the revenue agent should have been allowed to collect the moneys expended for gasoline and oil purchased, which were made without competitive bidding. These items are covered by rulings heretofore announced following *Paxton* v. *Baum.*

It is next contended that the revenue agent should have recovered two hundred eighty-one dollars and eighty-four cents allowed to the Young Men's Business Club by the board of supervisors to reimburse for expenditures in having a county exhibit of agricultural products of Warren county at the state fair. It is admitted that there is no express provision in law authorizing the board to spend county money for this purpose, but it is insisted by the appellee that this could be justified by sections

142 Miss.—13.

3782 and.3783 of Hemingway's Code (Laws of 1908, chapter 103), authorizing the board of supervisors to establish a department of agriculture, the purpose of this department being to disseminate useful information among farmers and to develop the agricultural resources of the county. We think from a careful study of the act that it does not authorize the allowance, and that the revenue agent should recover this item.

It is next insisted by the revenue agent that he should have recovered an item of five hundred eighty-two dollars and fifty-five cents, sued for on an allowance to J. H. Culkin under warrant issued January, 1921, in payment of an automobile for the use of the superintendent of education, and also sixty-two dollars and eighty-five cents for insurance paid on such automobile. Under chapter 122, Laws of 1920, section 25, in counties where the assessed value exceeds thirteen million dollars, the superintendent of education may have a stenographer and assistant, or both, and his actual expenses incurred while attending to duties outside of the office may be allowed in the discretion of the board. In the providing of the expenses there is not authorized the purchase and upkeep of automobiles. There is also a special act, chapter 577, Laws of 1920, authorizing the board of supervisors of Warren county to pay the county superintendent of education a sum not exceeding seventy-five dollars per month in addition to his regular salary for his expenses while in performance of official duties so long as the county maintains its consolidated school system, and may, in addition, allow annually a sum necessary to defray his railway fare and hotel expenses in attending not more than two educational conventions in the United States. This act does not expressly authorize the allowances here made individually, and if it be construed so to do, it would violate clauses (o) and (p) of section 90 and section 91 of the constitution, which last section prohibits the legislature from enacting any law for one or more counties not applicable to all counties in the state

It is next contended by the revenue agent that he should have been allowed the recovery of the sum of eighty-four dollars and thirty-five cents, allowed E. S. Martin while a member of the board of supervisors, and the sum of sixty-three dollars allowed him within a year after he went out of office, at a time when he was prohibited by section 109 of the constitution of the state from being directly or indirectly interested in any contract of said district, county, or town, authorized by any law or order made by the board of which he was or may have been a member, and in violation of section 364, Code of 1906, on the same subject, and also in violation of section 1305, Code of 1906, making it a criminal offense to be so interested. We think the revenue agent should have been permitted to recover for these items.

The chancellor allowed an item of two hundred twenty-two dollars and twenty-six cents, allowed to Dr. Myers in December, 1920, as county health officer, for a trip to Washington to attend some meeting of a professional nature there, and there is a cross-appeal by the defendants as to this item. The appellees contend that it ought not to have been allowed to the revenue agent, as the warrant was properly allowed to the said Dr. Myers because it falls under the jurisdiction of the board under that clause giving the board jurisdiction ''of all matters of county police.'' We think the chancellor properly allowed the revenue agent to recover this item, and his action in reference thereto will be affirmed.

It is contended by the appellees that although the allowances made to the King's Daughters and the Ladies of Charity may not have been in accordance with law, still the legislature ratified what was there done by chapter 704, Laws of 1924, printed in Local and Private Laws of Mississippi 1924, p. 194. This act reads as follows:

''Be it enacted by the legislature of the state of Mississippi that the acts of the boards of supervisors of Warren county, in sustaining the poor of the said county, and in expending money therefor, be, and the same are

It is next contended that the revenue agent should have been allowed to collect attorney's fees paid to the attorney of the highway commissioners for preparing bonds, giving advice to the commissioners, and preparing certified records, etc. It is contended by the appellant that it was not any part of the duty of the attorney for the highway commission to prepare such papers, and the board had no authority to employ an attorney to prepare such bonds, because it had a regularly retained attorney for the board of supervisors other than the attorney for the road commissioners, whose duty it was to prepare these papers and render these services. We are of the opinion that the payment of the account of this attorney of the highway commission out of the funds of the road district involved was proper. Chapter 176, Laws of 1914, expressly authorized the employment of an attorney, and does not fix the particular duties of the attorney, and it is contemplated that the expenses of the bond issue be paid out of the proceeds of the bond issue of the district or the funds of the district, and that it is not to be paid out of the general county funds; and, while the board of supervisors have no authority to employ an attorney other than its retained attorney, except in litigated cases, still that does not render what is done here illegal, because the board did have authority to employ the attorney here to aid the road commissioners, and we think it is contemplated that this attorney would attend to the legal matters involved in such bond issue. Therefore the attorney's fee was properly allowed by the board, and the chancellor will be affirmed as to this item.

There were allowances for office rent for the highway commissioners which we think should have been allowed to the revenue agent, as there was no authority under the act (chapter 176, Laws 1914) for the board to rent offices for the highway commissioners, who are agents of the board of supervisors under the act.

regulating costs, charges, and fees of officers. Under clause (o), section 90, no special or local act can be passed creating, increasing, or decreasing the fees, salaries, or emoluments of any public officer, and such statute could not be given the effect contended for here.

A large number of school allowances were challenged because not made in conformity to law. It appears that the superintendent of education and the trustees of the agricultural high school and the members of the county school board adopted a system of getting the board of supervisors to pass an order allowing all expenses in conducting the agricultural high school, and in the erection of buildings and equipping school buildings, and in the purchasing of supplies for schools, and in the letting of contracts for wagons and teams for transportation of pupils in consolidated school districts, and for the repair of such property. The system adopted was that the superintendent of education, Culkin, would O. K. or approve all accounts, and when they were approved by him, they would be allowed by an order on the minutes of the board of supervisors. The minutes of these boards showed this arrangement to be entered into with the board of supervisors by the said other boards, and the allowances were made in this manner and were paid out of funds which would have been used in such payments, but for which the law provides the board shall issue warrants on the order of the trustees of the agricultural high school, and the trustees of the consolidated schools, and of municipal separate school districts in certain cases. In other words, there was a departure from the method fixed by law, but under the views above stated, with reference to the decision of *Paxton* v. *Baum,* there is no personal liability nor liability on the bonds of the board of supervisors. The same ruling covers the conditions as to all contracts made by the board of supervisors in vacation, and without complying with the law as to advertisements, etc.

hereby, in all respects, validated, whether such support was for the poor in the county home or county poorhouse, or in the private homes, or through agency of the King's Daughters.''

The revenue agent challenges the constitutionality of this act. As we have seen above, the act was without authority of law, there being no authority under the statutes in force at the time the allowances were made to pay out the money in this manner. Section 96 of the state constitution provides that the legislature shall never grant any extra compensation, fee, or allowance to any officer, agent, servant, or contractor for services rendered on a contract made when there is payment or part payment of any claim under any contract not authorized by law. Section 100 of the state constitution provides:

''No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims.''

When the board paid out the county's funds to an object not authorized by law a liability arose under section 346, Code of 1906 (section 3719, Hemingway's Code), to the county for such sums both against them and their bondsmen, and it was not within the power of the legislature to discharge such members by subsequent act undertaking to legalize what they then did in violation of the law, and which was by existing law a personal liability against themselves and their bonds. It also provided in section 87 of the constitution:

''Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association.''

The statute last referred to, is a general law and was a general law at the time of the passage of the local private act, and also at the time of making the prohibited allowances, and these sections of the constitution are violated by the said chapter 704, and it is unconstitutional and void.

It follows from what we have said that the judgment of the chancellor is affirmed in part and reversed in part, and the cause will be remanded, with directions to the chancellor to allow the appellant to recover those items held in this opinion to be unauthorized by law, and such allowances as made to the supervisors in violation of the provisions of law.

*Reversed and remanded for a decree in accordance with this opinion.*