A. M. PAXTON ET AL. v. J. F. BAUM ET AL.

59  531
76  809

1. BOARD OF SUPERVISORS.  *Official bonds.*

   The suit by any tax payer authorized in Code 1871, § 1386, against members of the board of supervisors, for the appropriation of county money to illegal objects, may be brought upon the bonds required by the Act of April 4, 1876 (Acts 1876, p. 46) for the faithful performance of their official duties.

2. SAME.  *Jurisdiction.  Statutory regulation.*

   Jurisdiction over "roads, ferries and bridges," conferred by the Constitution on boards of supervisors, is subject to legislative regulation as to the manner of its use, and must be exercised in conformity with the statute.  *Supervisors* v. *Arrighi,* 54 Miss. 668, cited.

3. SAME.  *Liability for illegal appropriation.  How incurred.*

   Liability under Code 1871, §§ 1378, 1386, for appropriating money " to any object not authorized by law " is incurred, by diverting it from the purposes designated by law, and not by devoting it to a proper end, although in an irregular or unauthorized manner.

4. SAME.  *Judicial power.  Liability for corrupt use.*

   A corrupt appropriation will render members personally liable, even if within the jurisdiction of the board; whether it will affect their sureties, *quære;* but they are liable for all money illegally voted by the members to themselves, since no one can be judge in his own case.

APPEAL from the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

Citizens and tax payers of Warren County brought suit for the use of the county against A. H. Arthur, supervisor for the first district, and J. F. Baum and others, sureties upon his official bond, given under the Act of April 4, 1876, and alleged, as breaches of the bond, that the board of supervisors had made forty-seven illegal appropriations almost exclusively as to roads, ferries and bridges during his membership, which were specified in detail, as for instance : Said board appropriated (1) to G. M. Haszinger the sum of $77.88, for material and work done on the Hall's Ferry road, under a contract not let out in the open session of the board ; (2) the sum of $30 to A. L. Pierce, for specifications for work done on Cowan road ; (3) the sum of $12 to E. Kleinman, a former member of the board of supervisors, for services performed by him as a member of the board

in its recess, called "extra days" services; (4) to D. Kennedy, the sum of $99.75, for work done on bridges on the Warrenton road, upon a contract not let out in the open session of the board. The sureties demurred upon the grounds (1) that the plaintiffs had no right to sue on the bond; (2) that nearly all the appropriations alleged as breaches were not "to objects not authorized by law;" and (3) that the board, under the State Constitution, had exclusive jurisdiction of the matters mentioned and the right to make the appropriations. From a judgment sustaining the first ground of demurrer and overruling the others, the plaintiffs appealed, and it was agreed that the Supreme Court should decide the three questions presented by the demurrer.

*Cowan & McCabe*, for the appellants.

1. Code 1871, § 1386, makes the individual members of the board liable to the county for any illegal appropriation of its funds, and provides a means of enforcing the liability so declared. When an appropriation of public funds is made which is condemned by that section, the appropriation so made becomes a debt due from the individual members of the board to the county, and the tax payer is authorized to sue and collect for his county. But frequently the liability thus arising could not be enforced, the officer was insolvent, and the demand against him wholly worthless. It was to cover this defect in the law that the Act of April 4, 1876, was passed. Its main object was to provide an indemnity to the county against the wrongful official acts of its officers. The statute is remedial and should receive a liberal construction. It is, and was intended to be, *in pari materia* with the section of the Code above cited, and with all other laws relating to officials, their duties, liabilities and bonds. Without a reference to these laws, we could not tell what the bond required by the Act of April 4, 1876, was intended for, what its condition, or what were the remedies thereon. By such reference we find the remedies upon it as limitless as the law.

2. Pay was voted by the board to members for "extra days" and attendance at called meetings, and allowances made on contracts let out by some individual member of the board in vacation. The statute is so plain with reference to these

allowances that it is a work of supererogation to offer any comments. Code 1871, §§ 1358, 1389, 1394, 2360. These sections were, at every meeting, openly and shamelessly violated. There can be no doubt that such expenditures were void. They are condemned by recent decisions of this court. *Crump* v. *Supervisors*, 52 Miss. 107 ; *Supervisors* v. *Arrighi*, 54 Miss. 668 ; *Beck* v. *Allen*, 58 Miss. 143. We deny that the construction put by counsel, in his brief, on Code 1871, § 1386, is the proper one. Any illegal appropriation is one made to an object not authorized by law within the sense and meaning of that statute. To allow the board to disobey the law as it is written is to allow them to be a law unto themselves. Suppose it could be shown on the trial of the cause that, if certain "jobs " let out by the board in violation of law had been let out as the law directs, they would have come cheaper to the county. It will not do to say that in those matters over which the board have jurisdiction they can exercise it as they please, and in plain disregard of the law of the land. When the board makes an allowance that is *illegal* from any cause whatever, they are treading on *unauthorized* ground within the sense of Code 1871, § 1386.

3. The third ground of demurrer is settled by the cases of *Supervisors* v. *Arrighi* and *Beck* v. *Allen, ubi supra*, and *Blake* v. *McCarthy*, 56 Miss. 654. Comment is unnecessary.

*H. C. McCabe*, on same side, argued the case orally, and *T. C. Catchings*, Attorney General, filed a brief.

*M. Marshall*, for the appellees, argued orally and in writing.

1. The appellants had no right to sue on the bond, and the demurrer of the sureties was properly sustained on that ground. The liability of the sureties depends upon their contract, and is *strictissimi juris*. It is not to be extended beyond their undertaking. When they executed the bond, they assumed responsibility in a certain way and to certain parties only. The act requiring the bond provided that the condition and remedy upon it should be that provided by law upon the official bonds of other county officers. Acts 1876, p. 46. The remedy upon such bonds was by suit in the name of the State for the use of any person injured by the breach. Code 1871, § 311. Such usee being the real plaintiff, the suit was

his suit, asserting his own right.  There is no natural, and generally no legal, right in any one to maintain an action for the right or to redress the wrong of another; and if any such right exists in this case, it must be by virtue of a statute expressly giving it.  The plaintiffs below claimed to be authorized to sue by Code 1871, § 1386, Code 1880, § 2177, which provides that " if any board of supervisors shall appropriate any money to any object not authorized by law, the members of such board shall be liable, personally, for such sum of money, to be recovered by suit, in the name of their successors in office, or in the name of any person who is a tax payer, who will sue for the use of the board of supervisors of their county." This statute does not support the right.  It authorizes only a personal suit against the member, and none against his sureties. At the time that section was enacted in the Code of 1871 there was no such bond required.  But even though we may think that, when the bond was by statute provided for, the remedy should have been extended, yet the omission cannot be remedied by judicial legislation ; it is a *casus omissus.*  Further, the statute only authorizes a suit by the tax payers where the appropriation is to " any object not authorized by law."   These words mean where *the object* for which the appropriation is made is one for which the board is not authorized to make any appropriation, as, for instance, to the building of a court-house in another county, and do not apply to a case where, the object of the appropriation being legal, the appropriation is made in an illegal manner, or without compliance with the directions of the statute, as, for instance, where the appropriation was for building bridges, but the work was upon a contract made in vacation.   Although such a contract would not be enforceable as a contract, the county would, after it was executed and the benefit accepted by the county, be liable, not necessarily for the contract price, but for the value received ; and an appropriation for the purpose of paying for such value would not be to any object not authorized by law.  If these views are correct, the second ground of demurrer was improperly overruled.

2. The court below erred in not sustaining the third ground of the demurrer.  By the Constitution of Mississippi, art. 6,

§ 20, there is conferred upon the board of supervisors " full jurisdiction over roads, ferries and bridges." The words " full jurisdiction," as used in that Constitution, were construed, in the case of *Bank of Mississippi* v. *Duncan*, 52 Miss. 740, to mean that nothing is reserved, and as conferring the power of fully and finally disposing of the subject-matter, and the constitutional grant of power in these words was held to be in limitation of the general legislative power over the subject as to which such jurisdiction is conferred. These words must be interpreted in the same sense wherever they occur in that instrument. Applying this rule of construction, and interpreting the same words in the same way, the jurisdiction conferred by the Constitution upon the board of supervisors over roads, ferries and bridges is exclusive, and the legislature could not take away the jurisdiction, could not restrict the board in its exercise, and equally could not govern the board in its exercise of the power derived from the higher source. It is argued that the legislature could " regulate " the exercise of the power. That word " regulate " means to govern, to control. If the legislature can do that, the jurisdiction of the board is not full, complete or final, but is modified just so far as the legislature may, in the exercise of its right, see fit to interfere, because it is the judge of how it will exercise the right. Under pretence of directing or controlling the board in the exercise of the jurisdiction, it may in part take it away, or, by regulations, interfere with its efficient exercise.

CAMPBELL, J., delivered the opinion of the court.

The act approved April 4, 1876 (Acts 1876, p. 46), requiring members of the board of supervisors to give bonds, intended to furnish a security to the public for the faithful performance of duty in the important matters confided to them ; and as § 1386 of the Code of 1871 made them personally liable for money appropriated to any object not authorized by law, and authorized suit to be brought therefor, for the use of the county, by any tax payer, such suit was authorized to be instituted on the bond required as a security for the responsibility of the principal obligor.

The jurisdiction over " roads, ferries and bridges," conferred

on boards of supervisors by the Constitution, is subject to regulation as to the manner of its exercise by the legislature, and must be exercised in conformity to law. *Supervisors* v. *Arrighi*, 54 Miss. 668.

By § 1378 of the Code of 1871, it was provided that "the boards of supervisors shall direct the appropriation of the money that may come into the treasury of their respective counties, but shall not appropriate the same to any object not authorized by law," and by § 1386 members were made liable personally for such sum of money as the board should appropriate "to any object not authorized by law." The question is as to the interpretation of the expression "object not authorized by law." The objects to which money in the county treasury may be appropriated are designated by law, and it is not legally appropriable to any other purposes. If it is appropriated by the board of supervisors to some other object than is authorized by law, members are liable personally for it, unless they voted against such appropriation. It is for money appropriated to something for which the law does not permit it to be appropriated at all, in any way or under any circumstances, that members are personally liable. It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally. It is what the money is appropriated to, and not how it is applied, that furnishes the test of personal liability for it. "Object" signifies the thing aimed at, the end sought to be accomplished. If this is not the true interpretation of the language mentioned, members of the boards of supervisors would be liable personally for every mistake or error of judgment or of information as to facts whereby money was appropriated even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending it. Either members of the boards of supervisors are personally liable for every appropriation not made in strict conformity to law, or they are not liable except for a diversion of public money from authorized objects and its appropriation to such as are not authorized. The objects to which the boards may appropriate money are designated by law, and may be known to them; and, in all cases

of doubt, they may resolve the doubt against the appropria-
tion, and avoid risk of liability ; and it may be supposed that
for appropriations to objects not authorized by law, it was in-
tended to make members of the boards of supervisors personally
liable.    But, in view of the well-settled rule of the common law
that for errors or mistakes a public officer acting judicially or
*quasi* judicially is not liable, it could not have been the purpose
of the legislature to make members of boards of supervisors per-
sonally liable for errors or mistakes as to how to act in matters
committed to such boards by law, and as to objects for which
an appropriation of money is authorized to be made by them.
It is when they disregard the law as to the objects to which it
has devoted the public money, and divert it to some object to
which the law has not devoted it, that personal liability at-
taches.                                       *Judgment reversed.*

Suggestions of error were then filed by *T. C. Catchings, H.
C. McCabe,* and *Warren Cowan,* for the appellants, accompa-
nied by written arguments.

*Mr. Catchings* maintained that, if the meaning of the opinion
is that supervisors are never liable for their appropriations
to a legitimate object, no matter how fraudulently or corruptly
they proceed in violation of law, it can not be sustained either
under Code 1871, § 1386 and Acts 1876, p. 46  (c. 53), or
under the latter statute considered with reference to the con-
dition of the bond and § 1752 of the Code ; that contracts of
boards of supervisors for legitimate objects are often void
(*Supervisors* v. *Arrighi,* 54 Miss. 668), and the appropriation of
money to pay for work done under such void contracts ren-
ders the members liable on their bonds ; that the condition of
the bond is broad enough to cover every breach of duty,
whether of omission or of commission, and the same remedies
may be had upon it as on other official bonds ; that the lia-
ability imposed by Code 1871, § 1386, may be enforced by the
remedy of tax-payers under § 1752, or a similar remedy given
by the Act of 1876, which provides that the remedies on this
bond "shall be the same as on other official bonds ; " that not
only is the personal liability of supervisors for illegal appropri-
ations, which, under Code 1871, § 1386, may be enforced at

suit of a tax-payer, extended by the Act of 1876 so as to include their bonds; but also that Code 1871, § 1752, affords a remedy to tax-payers upon the bonds of county officers, suitable and reasonable in its applicability to the bond of a supervisor, and that this remedy can be availed of to recover sums lost to the county, " from the failure or neglect of " this supervisor, by suit upon his bond, which is conditioned in accordance with Acts 1876, p. 46, " as the bonds of other county officers."

*Mr. Cowan* contended that the liability of a member of the board of supervisors on his official bond is co-extensive with the liabilities of other officers on their official bonds (Acts 1871, p. 46) ; that the special liability imposed by Code 1871, § 1386, is in addition to all the other kinds of liabilities imposed by the statutory official bond of a supervisor ; that his bond is a security against injury or damage accruing from any breach thereof to any person, the county included ; and that whenever the appropriation of county money is made in such an illegal manner as to render it void, or whenever it is made to pay a void obligation or carry out a void contract, it is an appropriation to an object not authorized by law, and the member is liable for it on his official bond.

*Mr. McCabe* argued the same points, and also claimed that the decision in the case of *Supervisors* v. *Arrighi*, 54 Miss., 668, and in the case under consideration, are not consistent with each other. The result of the two decisions, when taken together, amounts to this : that while the legislature has the power to regulate boards of supervisors as to the manner of exercising the jurisdiction over roads, ferries, and bridges, conferred on them by the Constitution, the board may, nevertheless, with perfect impunity to themselves, disregard the rules and regulations prescribed, and set them at naught. The effect of the latter opinion is therefore to nullify the former, especially that portion of it which is of any virtue ; viz., and the board " are bound to exercise the jurisdiction in conformity to the law."

CHALMERS, C. J., delivered the opinion of the court.

We respond to the three principal points made by the suggestions of error.

1. It is said that our opinion relieves supervisors from liability where the appropriation made is within their jurisdiction, though it be corruptly made by them. No such question is before us. There is no allegation of corruption in the declaration. Judicial officers of all grades are liable for their corrupt judgments. Whether the sureties on the bonds of supervisors are, it will be time enough to decide when the case is before us. Certainly they would be liable for all money illegally voted by the members to themselves, since no officer can claim to be acting as a judge in voting money to himself.

2. It is said that the bonds required of and given by supervisors are as broad in their terms as those exacted of other county officers, and should cover to the same extent every default of duty, whether of commission or of omission. But we cannot ignore the fact that supervisors, in the discharge of many of their functions, are judicial officers, and especially so in adjudicating upon the validity of claims against the county. A law which would make them personally liable for every erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting the office, or of becoming the surety of those who did.

3. It is said that our opinion contravenes the doctrine laid down in *Supervisors* v. *Arrighi*, 54 Miss. 668, that a warrant issued in payment of a contract illegally made was a nullity, imposing no liability upon the county, and incapable of being ratified by the board of supervisors. There is not the slightest conflict between that case and our opinion in the present one. The question there was, Whether payment of such a warrant could be enforced against the county? The question here is, Whether the members of the board can be made personally responsible for having issued it? The building of a bridge or a court-house has been let out, we will say, after nineteen days advertisement, instead of twenty, as required by law; or the notice has been posted in three public places, instead of six; or no notice of the letting out has been given at all, but it takes place at an adjourned meeting, in open session, or in vacation by a committee appointed for the purpose. Is it not enough that, though the county gets the work, it cannot be compelled to pay for it? If some subsequent board, in ignorance of the

facts or through mistake of the law applicable to the facts, issues a warrant in payment of the work, which warrant cannot be by law collected, shall the members of the board also be made personally liable for having issued it ? Where is the line, and what is the limit of this personal responsibility ? Shall we say that it exists if the letting out of the contract has not been advertised at all, but does not arise if there has been an advertisement for ten or fifteen days? Shall we make the members liable if the contract was made in vacation, but not liable if made in open session at an adjourned meeting, which they had no authority of law to hold? Shall we give judgment against them if the obligation was contracted at the wrong place, and acquit them if the place was right, but the time wrong? Manifestly it is impossible, after we pass the point of corruption, to draw any line other than that laid down by us, namely, liability where the subject-matter of the appropriation is beyond the jurisdiction of the board ; non-liability where the object is within the jurisdiction, but there has been a mistaken exercise of legal power. Within this limit, every case must depend upon its own facts.