MILLER, STATE REVENUE AGENT, *v.* GORE *et al.*\*

(Division A.    Feb. 21, 1927.)

[111 So. 451.    No. 25747.]

1. COUNTIES. *State revenue agent may recover excessive sum loaned by board of supervisors out of county sinking fund (Hemingway's Code, sections 3704, 7056).*

Under Laws 1912, chapter 234 (Hemingway's Code, section 3704), attempt to loan by board of supervisors out of county bond-sinking funds in an amount nearly double the assessed value of security given therefor is unauthorized and illegal, and under Code 1906, section 4738 (Hemingway's Code, section 7056), state revenue agent had authority to sue for and recover on behalf of county the sum so loaned.

2. COUNTIES. *State revenue agent held entitled to commission on amount paid after action to recover illegal loan by supervisors from county sinking fund (Hemingway's Code, section 7066).*

Under Code, 1906, section 4748 (Hemingway's Code, section 7066), relative to compensation of state revenue agent, he is entitled to to recover twenty per cent. commission on bringing suit to recover moneys illegally loaned by board of supervisors, notwithstanding payment was made into county treasury before determination of action.

3. COUNTIES. *Defendants, in suit by state revenue agent to recover illegal loan from sinking fund by board of supervisors, held liable for reasonable attorneys' fees.*

Defendants, in action by state revenue agent to recover amount illegally loaned by board of supervisors from county sinking fund, *held* liable for reasonable attorneys' fees for collection as provided in note executed to county, since, having participated in illegal act and received funds on insufficient security, they are estopped to take advantage of illegal action of supervisors in making attempted loan.

*Corpus-Cyc. References Counties, 15CJ, p. 588, n. 43.

APPEAL from chancery court of Quitman county.
HON. C. L. LOMAX, Chancellor.

Suit by W. J. Miller, state revenue agent, against W. E. Gore and others. Decree of dismissal, and complainant appeals. Reversed and decree rendered.

*Boone, Lowrey & Boone* and *Lowrey & Lamb,* for appellant.

The original bill sought a judgment against the members of the board of supervisors and their sureties for this debt because the loan was unlawful *ab initio.*

It was so patiently in violation of the law for the board to make this loan for twice the assessed value of the land when the statute allowed them to lend only one-half of the assessed value that to state the fact is to prove its invalidity. The chancellor in sustaining the demurrer held that the board having jurisdiction of the subject-matter and the right to lend sinking funds on

real estate security were not personally liable for making an error in the amount of the loan.

We are not asking any review of that order of the chancellor, as we think the payment into the treasury of the county by the debtor of the sum shown in evidence makes any further effort to hold the members of the board for liability unnecessary.

I.   As to the right of the revenue agent to bring this suit, see: section 4738, Code of 1906 (section 7056, Hemingway's Code); *Robertson* v. *Monroe County,* 76 So. 184, 118 Miss. 520; *Robertson* v. *Bank of Batesville,* 77 So. 318; *Morton* v. *Trustees of Grenada Academy,* 8 S. & M. 773; *Adams* v. *Jackson Ry. Co.,* 30 So. 58, 78 Miss. 887.   The only statute then in force governing the expenditure or loaning of court house and jail sinking funds was section 3704, Hemingway's Code.

The recovery is sought against the appellees, the parties receiving the wrongful, unlawful and illegal allowance.   They were charged with notice of the statute in force and the limitations of the board of supervisors to make a loan in excess of its authority, and in passing we desire to call the court's attention to the fact that the appellees should be specially charged with such notice, due to the fact that prior to that time and at the present time, he was acting as attorney for the board of supervisors.   *Howe* v. *State,* 53 Miss. 69; *Mills* v. *Amite County,* 102 So. 465; *Robertson* v. *Bank of Batesville,* 77 So. 318; *Brown* v. *Reeves,* 92 So. 825, 129 Miss. 755.

II.   The appellees, the beneficiaries of this unlawful appropriation, should be estopped in the face of the plain statute to contend that this attempted loan was anything but void in its inception, *ab initio.*   A person cannot receive the benefits of allowance where the board of supervisors exceed their legal authority.   Our courts have held that excess of authority renders an appropriation void.   *Howe* v. *State,* 53 Miss. 69; *Mills* v. *Amite*

*County,* 102 So. 465; *Robertson* v. *Bank of Batesville,* 77 So. 318; *Brown* v. *Reeves,* 92 So. 825, 129 Miss. 755.

III. This suit having been instituted before the payment by the appellees, the appellant has the right to continue this suit and recover from the appellees twenty per cent of the amount paid to the county. The payment to the county after the institution of the suit did not relieve the debtor or his liability for this twenty per cent. This is expressly held in the case of *Miller* v̇. *Henry,* 103 So. 203.

IV. The appellees also, by the terms of the note and deed of trust securing the same, are indebted in the sum of a reasonable attorney's fee in addition to the principal and interest and this is as much a part of the debt as the principal and interest. This suit having been instituted properly, before the payment, the payment as we think the record clearly shows, being brought about by the suit, there can be no reason for the contention that these attorney's fees are not recoverable and are not a substantial part of the debt.

*Cutrer & Smith,* for appellees.

I. With respect to the liability of the appellee, Mrs. Gore, we submit that the record is free from doubt. It is uncontradicted in the record that she signed the note, upon which we may say, suit was brought, without any consideration at all, good or valuable, moving to her from the treasurer of Quitman county, or from the board of supervisors, or from the county itself. The note, as to her, was clearly *nudum pactum;* and, therefore, no liability ever attached to her because of her having signed her name to the note after the same had been signed by her husband. The county has never made any claim against her.

II. The suit cannot be maintained against the appellee, W. E. Gore. It will be noted that the suit is brought

against him upon a note which is no longer of any force or effect. The record shows affirmatively that the board did not place the note in the hands of appellant for collection, and it shows affirmatively also that the appellant was never requested by the board to take any action with respect to collection. The record shows further that the appellee acted in the utmost good faith with respect to the making and securing and payment of the loan.

The state revenue agent elected to proceed against the board of supervisors for his compensation whatever it may have been, and whether payable by the county or not, was a question between the county and the appellant, with which the appellee had no concern. The full debt was paid and paid into the county treasury.

It is true that the court said in *Miller v. Henry*, 103 So. 205, that if the appellant was entitled to any compensation "it would have been more regular under section 4739, Code of 1906 (section 757, Hemingway's Code, if the entire amount had ever been paid over to the revenue agent."

III. We have been considering the situation so far as if the extension of the debt which the appellee Gore owned the county was of questionable validity. We contend, however, to the contrary. The board of supervisors of a county is the administrative agency of the county and the only agency through which it handles and administers its financial affairs. The subject-matter of providing a court house or jail are subject-matters which by the constitution and laws of the state are committed to the discretion of the board. The handling and disbursement of funds provided by law for these or either of these purposes are likewise committed to the judgment of the board and the board is vested with full discretion as to the time and manner it will act with respect to either or both of them.

IV. It is finally contended that the appellant is entitled to recover of the appellees twenty per centum of

the amount of the debt as his commissions for services alleged to have been rendered.

There could be no liability on this account in any event unless it had been shown positively and affirmatively that the revenue agent practically made or forced the collection. *Adams* v. *Bolivar County,* 75 Miss. 154; *Miller* v. *Henry,* 103 So. 205.

Argued orally by *P. H. Lowrey,* for appellant, and *E. W. Smith,* for appellees.

Cook, J., delivered the opinion of the court.

W. J. Miller, state revenue agent, filed a bill in the chancery court, for the use and benefit of Quitman county, against W. E. Gore and his wife, Mrs. Bessie G. Gore, M. P. Lowrey, trustee, and the members of the board of supervisors of Quitman county and the sureties on their official bonds, charging, in substance, that in September, 1919, the said board of supervisors had loaned to the defendant W. E. Gore the sum of ten thousand five hundred dollars out of the bond-sinking funds of said county, which said loan was evidenced by a promissory note due four and one-half years after date, bearing interest at the rate of six per cent. per annum, payable annually, and providing for the payment of a reasonable attorney's fee for collection if not paid at maturity, and was secured by a deed of trust on real estate of the assessed value of only five thousand nine hundred dollars; that the said loan was illegal and fraudulent, for the reason that the sum loaned was largely in excess of the amount of such funds that might lawfully be loaned on security of the assessed value named; that the said unauthorized and illegal loan was made by collusion between the said members of the board of supervisors and the said defendant W. E. Gore; that by reason of the violation of the statute then in force regulating such loans the members of the board of supervisors became personally liable for

the amount of the loan, and especially for any loss sustained by the county by reason of the illegal disposition of said funds; that on account of the fact that the allowance of the said sum to the defendants W. E. Gore and Bessie G. Gore was unauthorized and illegal in its inception, they became and were liable to at once repay the said sum into the county treasury, regardless of the date of maturity fixed in the alleged loan contract; that by reason of their participation in the said unauthorized and illegal actions of the board of supervisors in making said attempted loan, they could not take advantage thereof, and, consequently, the complainant had the right to sue for said sum and to have the said deed of trust foreclosed and the proceeds applied to such decree as might be rendered against the several defendants. The bill prayed that the said allowance of ten thousand five hundred dollars to the said defendants, W. E. Gore and his wife, Mrs. Bessie G. Gore, be decreed to be an unauthorized and illegal expenditure and allowance and in contravention of the statute; that a decree be entered in favor of the complainant and against all the defendants for the said sum, with accrued interest and attorney's fees as provided in the note; and that the deed of trust executed by the defendants W. E. Gore and wife be foreclosed and the proceeds of the sale applied to payment of such decree.

All the defendants filed a demurrer to the bill of complaint, which was overruled as to the defendants W. E. Gore and Mrs. Bessie G. Gore and sustained as to the members of the board of supervisors. From this order sustaining the demurrer, an appeal was prosecuted to this court, but this appeal was afterwards dismissed. After the demurrer was overruled as to the defendants W. E. Gore and wife, they paid into the county treasury the amount of the said indebtedness, with accrued interest, and thereupon filed an answer to the bill of complaint admitting the correctness of the indebtedness sued for, but averring that the same was not due at

the time the suit was filed, for the reason that after the maturity of said note, the board of supervisors, for a valuable consideration, duly made and entered an order extending the due date of the said indebtedness to the 8th day of April, 1925. The answer denied all charges of collusion in the negotiations for the loan, and all illegality in the consummated loan, and charged that the indebtedness sued for had been paid in full before the same was due.

The principal and interest of the indebtedness having been paid into the county treasury, through the board of supervisors, the suit proceeded to a final hearing upon the claim of the complainant, the revenue agent, for the commissions of "twenty per cent. of all amounts collected and paid over by him" allowed him by law, and also a reasonable attorney's fee for collection as provided in the note given to evidence the loan. The court below denied any recovery and dismissed the bill, and from this decree the complainant prosecuted this appeal.

In passing upon the correctness of the action of the court below in denying a recovery of the commissions allowed by law to the revenue agent, it will be necessary to first determine whether or not the revenue agent had the right to institute and maintain this suit at the time it was instituted. If this question is answered in the affirmative, then the right of the revenue agent to recover this commission from the appellees is established by former decisions of this court.

This loan was effected in September, 1919, out of the courthouse and jail bond sinking funds; and at that time the authority of the board of supervisors to issue such bonds and to create a fund for the retirement of the same and to loan such sinking fund was found in chapter 234, Laws of 1912 (section 3704, Hemingway's Code), which, among other things, provided that:

"Whenever said sinking fund shall accumulate to an appreciable amount before the time for the redemption of said bonds, the board of supervisors may loan such

accumulation at a rate of interest not less than six per cent. and on such terms and for such time not longer than the date fixed for the maturity of said bonds as they see fit, such loans to be secured upon improved real estate at one-half of its assessed value, and upon abstract of such real estate as provided for the loan of funds arising from the sale or lease of sixteenth section lands.''

While there was some proof tending to show that the value of the security given for the loan here involved was appraised at thirty thousand dollars by a committee of the board of supervisors, the proof was positive and undisputed that the assessed value of the real estate covered by the deed of trust together with forty acres of additional land, was only six thousand two hundred twenty-four dollars. The amount of the loan and allowance out of this bond sinking fund was ten thousand five hundred dollars, or nearly double the assessed value of the security given for the loan. This was in plain contravention of the express provision and limitation of the statute authorizing the loan of these funds, which only permitted a loan of not exceeding one-half of the assessed value of the security, and, consequently, the attempted loan was unauthorized and illegal. The board of supervisors was wholly without authority to make such an allowance out of the public funds, and, having done so, it was its duty to immediately sue for and recover the amount, and the recipients of this unauthorized and illegal allowance were under duty to at once repay the amount into the county treasury, and upon their failure to do so were subject to be coerced to do so by suit and foreclosure of the security given for the money received by them. This duty and liabililty were in no way affected by the attempt of the board of supervisors to extend the maturity of the indebtedness after it had matured under the terms of the original order of the board. At the time of this attempted extension, the statute authorizing the loan of bond sinking funds had been amended by chapter 278, Laws of 1920, so as to authorize the

loan of such funds on the security of a first deed of trust
upon improved real estate at one-fourth of its actual
value, to be determined by an appraisement of the board
of supervisors or a committee appointed for that pur-
pose, but the record does not show that any such appraise-
ment was made at the time of the attempted extension.
The only appraisement of the security given for this loan
was made at the time the original loan was made in 1919,
at which time the property appears to have been ap-
praised at thirty thousand dollars, which, under the act
of 1920, would have authorized a loan on the security of
only seven thousand five hundred dollars. At the time
this loan was made, the statute only authorized a loan out
of such funds of not more than one-half of the assessed
value of the security offered, and, the board having ex-
ceeded its authority in this regard and having made a
loan which was prohibited by the express terms of this
statute, the subsequent unauthorized attempt to extend
it added no validity thereto, and the revenue agent had
the right to sue for and recover on behalf of the county
the sum so loaned, and his authority for so doing is found
in section 4738, Code of 1906 (section 7056, Heming-
way's Code), which gives him the power and makes it
his duty to proceed by suit in the proper court for all
past-due obligations and indebtedness of any character
whatever owing to the state or any county.

Having reached the conclusion that the revenue agent
had the right to institute and maintain the suit to re-
cover from the appellees the amount of this unauthor-
ized allowance out of the public funds, it necessarily fol-
lows from prior decisions of this court, that, under the
facts and circumstances here involved, he is entitled to
recover from them the twenty per cent. commission al-
lowed him by law on all amounts collected and paid over
by him. Long after the institution of this suit against
the appellees and the board of supervisors, and while
it was pending and being actively prosecuted by the
complainant, the revenue agent, the appellees, through

the board of supervisors, paid into the county treasury the entire principal of the sum sued for, together with the interest accrued thereon at six per cent. per annum. The statute governing the compensation of the revenue agent is section 4748, Code of 1906 (section 7066, Hemingway's Code), which provides:

"Neither the state nor any county, municipality, or levee board shall be chargeable with any fees or expenses on account of any investigation or suit made or instituted by the state revenue agent; and he shall not receive any salary; but he shall be entitled to retain, as full compensation for his services and expenses, twenty per centum of all amounts collected and paid over by him, and of the purchase money of all lands bid in for the state by him and sold by the land commissioner."

In the case of *Miller* v. *Henry,* 139 Miss. 651, 103 So. 203, this court, in discussing the exact question as now presented, said:

"It was held in *Adams* v. *Bolivar County,* 75 Miss. 154, 21 So. 608, that the revenue agent, having given the required notice was entitled to his compensation whether suit had been brought or not, if his investigation was the cause of the money being paid over by the defaulting taxpayer, and that the revenue agent could not be deprived of his commissions, by the defaulting officer paying the money into the treasury. Under the statute, the revenue agent is entitled to recover for the state eighty per cent. of the amount due by the defaulting officer, and for himself twenty per cent. of the amount. The state has no interest in his commission of twenty per cent. Appellee had no right to pay the five hundred dollars into the state treasury. In fact it would have been more regular under section 4739, Code of 1906 (section 7057, Hemingway's Code), if the entire amount had been paid over to the revenue agent. He was authorized to collect it with or without suit, and, when collected, his interest in the collection was twenty per cent. of the amount. He was not required to pay the whole amount

146 Miss.—22.

into the state treasury, and then make claim against the
state, if that could be done for his commission of twenty
per cent. Appellee, by paying into the state treasury
appellant's commissions, did not acquit himself of his
obligation under the law to appellant. He was due to
pay that to appellant and no one else.''

The only remaining question is whether or not the ap-
pellees were liable for a reasonable attorney's fee for
collection as provided in the note executed by them at
the time of the consummation of this unauthorized loan.
The appellees were charged with notice of the provi-
sions of the statute authorizing the loan of these sinking
funds and of the want of authority in the board of super-
visors to make the loan in question, and, having partici-
pated in this unauthorized and illegal act and having
received the funds upon insufficient security, they are
now estopped to take advantage of the said unauthor-
ized and illegal action of the board of supervisors in mak-
ing said attempted loan, or to assert to their own advan-
tage the validity of the note evidencing the indebtedness,
or the security given therefor. Consequently, it having
become necessary to employ counsel to file suit and
carry on litigation for the recovery of this unauthorized
loan, we think the appellees became, and are, liable for
a reasonable attorney's fee, as provided in the note, to
be recovered by the revenue agent for and on behalf of
the county. The evidence is that ten per cent. of the
amount sued for and paid into the treasury as a result
of the suit would be a reasonable attorney's fee.

The decree of the court below dismissing the bill of
complaint will therefore be reversed, and a decree en-
tered here awarding the revenue agent twenty per cent.
on thirteen thousand thirty dollars and fifty cents paid
into the county treasury, as compensation, and also ten
per cent. of said sum as attorneys' fees.

*Reversed, and decree here for appellant.*