GULLY, STATE TAX COLLECTOR, *v.* BEW *et al.*

(Division B.   April 2, 1934.)

[154 So. 284.   No. 31117.]

428

(Division B.   May 14, 1933.)

[154 So. 721.   No. 31117.]

**Barbour & Henry**, of Yazoo City, for appellant.

**Maynard, FitzGerald & Venable**, of Clarksdale, and **J. Morgan Stevens**, of Jackson, for appellees.

**Anderson, J.**, delivered the opinion of the court.

Appellant, J. B. Gully, state tax collector, filed his bill in the chancery court of Leflore county against Kate and Ella Bew to foreclose two mortgages on real estate in the city of Greenwood in said county, one of the mortgages having been executed by Kate Bew to secure a loan of one thousand dollars of the sinking funds of the county and the other to secure a loan to Kate and Ella Bew of three thousand dollars of the sinking funds, the security for both loans being the same real estate; and against the members of the boards of supervisors making the loans, and the sureties on their official bonds, seeking to hold them personally liable for the amount of the loans with interest, and against the members of the subsequent boards of supervisors and the sureties on their official bonds, seeking likewise to hold them liable; and against the chancery clerk of the county and the surety on his official bond to hold them liable on the ground that the clerk issued the warrants for the loans without authority of law. The cause was heard on original bill, exhibits, and demurrers, resulting in a decree in favor of the defendants, who are the appellees on this appeal.

The three thousand dollar loan was made to Kate and Ella Bew on February 3, 1922, and a note, due and payable February 23, 1925, was taken by the county for that

amount, bearing six per cent interest per annum until paid. To secure the note they executed a deed of trust on the west one-half of lot 1 in block 1 of the Kimbrough addition to the city of Greenwood in Leflore county. The deed of trust was of the same date as the note. The order of the board of supervisors for the one thousand dollar loan to Kate Bew was made on December 6, 1926, but the warrant for the amount was not issued and delivered to her until December 22, 1926, and on that date she executed a deed of trust on the same property covered by the deed of trust executed by her and Ella Bew to secure the three thousand dollar loan.

The bill in this case was filed on December 21, 1932, therefore, more than six years after the three thousand dollar loan was made, and one day less than six years after the one thousand dollar note was made, the warrant therefor, as stated, having been issued and delivered on the 22d of December, 1926. The bill charged that both of the loans were illegally made by the board of supervisors, because they amounted to more than one-half of the assessed value of the real estate mortgaged to secure them, and more than one-fourth of its actual value; and the value of the real estate was not appraised by the board of supervisors making the loans, nor by a committee appointed by the board for that purpose, and reported in writing and recorded on the minutes of the board; and no abstract of title to the land given as security for the loans was furnished, certified to by the attorney for the board, or a reputable attorney satisfactory to the board, setting forth that in his opinion the borrowers had perfect title to the land, and that the mortgage given to secure the loans was a first lien on the land; and that by reason thereof the members of the lending board and the sureties on their official bonds became liable for the amount of the loans, with interest. The liability was sought to be fixed on the members of the subsequent boards and the sureties on their official bonds, upon the ground that the loans being illegally made at once be-

came due and payable, and the failure on their part to collect them. The bill does not charge that the subsequent boards knew that the loans made by the lending boards were unauthorized by law, nor that on a foreclosure the security taken for the loans would not yield sufficient to pay them, nor that the borrowers were insolvent.

The bill charged that the last clause of section 247, and certain provisions of section 5987, and section 259, Code of 1930, were violated in the making of the loans. The last clause of section 247 provides that when the sinking funds shall accumulate to an appreciable amount before the time for redemption of the bonds, the board of supervisors may lend such accumulation at a rate of interest not less than six per cent, and on such terms and for such time not longer than the date fixed for the maturity of the bonds as they may see fit, such loans to be secured upon improved real estate at one-half of its assessed value, and upon abstract of title to such real estate ''as provided for the loan of funds arising from the sale or lease of sixteenth section lands.''

Section 5987 provides, among other things, that when the sinking funds of a county shall accumulate to an appreciable extent before the time for the redemption of the bonds they are to discharge, the board of supervisors may loan such accumulation at a rate of interest not less than six per cent per annum on such terms and for such time not exceeding five years as they may deem advisable, and in no case to exceed the date of maturity of the bonds, such loans to be in all cases secured first by deed of trust upon improved real estate at one-fourth of its actual value, to be determined by an appraisement of the board of supervisors or a committee appointed by the board for that purpose, such appraisement to be reported in writing and the report recorded on the minutes of the board; and that no loan shall be made until the borrower shall have furnished, at his own expense, a complete abstract of title to the land offered as security, and the certificate

of the attorney for the board or some other reputable attorney satisfactory to the board attached to such abstract setting forth that in his opinion the owner has a perfect title to the land, and that a deed of trust properly executed would be a first lien thereon, said certificate to be recorded on the minutes of the board at the time the loan is made. (Section 6764, Code of 1930, providing for the loan of sixteenth section funds, contains substantially the same provision with reference to the abstract of title.)

The bill charged that on December 5, 1932, the board of supervisors then in office passed an order extending the time for the payment of these loans for the period of one year from that date, upon condition that the borrowers pay all taxes and assessment against the mortgaged property for the year 1932 prior to February 1, 1933. The order recited that this action was taken upon the application of the borrowers and in view of the prevailing depression in prices and the probability of sacrifice of the security by reason thereof.

Section 259, Code of 1930, provides that if a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally therefor.

In support of the contention that the members of the board and sureties on their official bonds are liable, appellant refers to sections 197 and 2888, Code of 1930. Section 197 provides that each member of the board, before entering upon the duties of his office, shall enter into bond with sufficient surety or sureties, conditioned and approved as bonds of county officers are required to be, in a penalty equal to five per centum of the sum of all the state and county taxes shown by the assessment rolls and levies to have been collectible in the county for the year immediately preceding the commencement of the term of office of the member; "and such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the

county for any injury by such illegal act of such member." Section 2888 provides the form and how official bonds shall be conditioned.

Appellant contends that the appropriation of these funds was to an object not authorized by law, and therefore was violative of section 259, which fixes personal liability for such appropriation on the members of the board not voting against it, and if to an object authorized by law, still there is liability under section 197, because in making the appropriation the law was violated.

We think it clear that sections 247 and 5987 conferred on the boards of supervisors jurisdiction of the subject-matter of lending the sinking funds of the county. No other reasonable conclusion can be reached from a reading of those sections. Having jurisdiction, the members of the board are not personally liable for errors of judgment in its exercise. It was so held in Paxton v. Baum, 59 Miss. 531. In subsequent decisions, involving the same question, the court did not intend to depart from the principles laid down in that case, and we do not think it did. At this distance of time from that decision we think it would be very well to set out the following excerpts from the opinion of the court:

"It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally. It is what the money is appropriated to, and not how it is applied, that furnishes the test of personal liability for it. 'Object' signifies the thing aimed at, the end sought to be accomplished. If this is not the true interpretation of the language mentioned, members of the boards of supervisors would be liable personally for every mistake or error of judgment or of information as to facts whereby money was appropriated even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending it. Either members of the boards of supervisors are personally liable for every appropriation

not made in strict conformity to law, or they are not liable except for a diversion of public money from authorized objects and its appropriation to such as are not authorized. The objects to which the boards may appropriate money are designated by law, and may be known to them; and, in all cases of doubt, they may resolve the doubt against the appropriation, and avoid risk of liability; and it may be supposed that for appropriations to objects not authorized by law, it was intended to make members of the boards of supervisors personally liable. But, in view of the well-settled rule of the common law that for errors or mistakes a public officer acting judicially or quasi judicially is not liable, it could not have been the purpose of the legislature to make members of boards of supervisors personally liable for errors or mistakes as to how to act in matters committed to such boards by law, and as to objects for which an appropriation of money is authorized to be made by them. It is when they disregard the law as to the objects to which it has devoted the public money, and divert it to some object to which the law has not devoted it, that personal liability attaches. . . . But we cannot ignore the fact that supervisors, in the discharge of many of their functions, are judicial officers, and especially so in adjudicating upon the validity of claims against the county. A law which would make them personally liable for every erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting the office, or of becoming the surety of those who did.''

In Haley v. State, 108 Miss. 899, 67 So. 498, construing sections 1, 2, and 170 of the Constitution, the court held that the boards of supervisors belong to the judicial branch of the government, although they have large administrative powers, and where a member of such board accepts an appointment as a levee commissioner, he vacates his former office. In Brown v. Reeves, 129 Miss. 755, 92 So. 825, the case of Paxton v. Baum, supra, was

reviewed rather elaborately, and its principles reaffirmed, and again in Miller v. Tucker, 142 Miss. 146, 105 So. 774. In the latter case the court construed sections 293 and 346, Code of 1906, of which sections 197 and 259, Code of 1930, are rescripts, and held that where the appropriation was to an object authorized by law, there was no liability under section 293 (section 197, Code of 1930), because in making the appropriation the statute authorizing it was violated. Furthermore, we hold that in a case where section 197 applies, the liability of the board is not direct but consequential; the liability is to indemnify the county against any loss proximately caused by the illegal act. J. B. Gully, State Tax Collector, v. McClellan (Miss.), 153 So. 524; Lizana v. State, 109 Miss. 464, 69 So. 292; Walton v. Colmer (Miss.), 147 So. 331; Id. (Miss.), 148 So. 635; Phillips v. Morrow, 210 Ala. 34, 97 So. 130; Dow v. Humbert, 91 U. S. 294, 23 L. Ed. 368. In the McClellan case the court held that the last clause of section 6764, Code of 1930 (providing for the loan of sixteenth section funds), did not impose direct but only consequential liability on the members of the board for a violation of the statute. The penalty provision of section 197 means the same thing as that provision; it imposes no direct liability but only resulting liability.

We held, therefore, that there is no liability on the part of the lending board because in making the appropriations they acted judicially. As to subsequent boards we hold they are not liable because the bill charges no breach of duty on their part. And the chancery clerk is not liable for the mere ministerial act of issuing and delivering the warrants for the loans. He was only doing what the board had ordered him to do in the exercise of its discretion. There is no charge of bad faith on his part.

Did section 6996, Code of 1930, bar the state tax collector from bringing this suit to foreclose the mortgages? That section follows:

"The power of the state tax collector to institute proceedings for the assessment of property which has es-

caped taxation by reason of not being assessed shall expire at the end of three years from the date when his right so to do first accrued, and he shall bring all suits he is authorized to bring within six years after the cause of action accrues and not thereafter, and demands may be made, and suits filed against defaulting public officers and depositories, within six years after the cause of action accrues, and not thereafter.''

We hold that under the authority of Miller v. Gore, 146 Miss. 327, 113 So. 203, he was barred as to the three thousand dollar mortgage but not as to the one thousand dollar mortgage, because as to the former the bill was filed more than six years after the cause of action accrued, but as to the latter within six years after the cause of action accrued. It is manifest that both of these loans were illegally made. They were made in a manner violative of both sections 247 and 5987, Code of 1930. Under the principles laid down in the Gore case the loans became due and payable as soon as they were made. The causes of action for their recovery accrued at once to the county. The cause of action did not accrue to the state tax collector; his power to sue was in the right of the county and on behalf of the county. Under section 104 of the Constitution, the statute of limitations does not run against the state or any of its political subdivisions, which, of course, includes the counties. The six-year limitation in section 6996 is not a limitation on the cause of action but a limitation on the right of the revenue agent to sue on an existing cause of action in favor of the county. If it were true that the revenue agent had no authority to bring this suit prior to the adoption of section 6996, nevertheless that section conferred such authority, provided it was exercised within the six-year period from the accrual of the cause of action to the county.

It will be observed that in the Gore case the board of supervisors had attempted to extend the time for the payment of the loan, as was done by the board in reference

to these loans. The court held that such order of extension was unauthorized and void; that notwithstanding such extension the board of supervisors had the right to sue for the return of the loan as soon as it was made; and that right could not be suspended or gotten rid of by such an order of extension.

It follows from these views that the decree below is affirmed, except as to that feature of the bill seeking a foreclosure of the one thousand dollar mortgage.

Affirmed in part, reversed in part, and remanded.

ON SUGGESTION OF ERROR.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

Appellant contends that our original opinion overrules Miller v. Tucker, 142 Miss. 146, 105 So. 774, and does not follow Paxton v. Baum, 59 Miss. 531. There is no doubt that Miller v. Tucker has apparently given the bar much trouble, but it should no longer do so in view of what the court en banc said of it in National Surety Co. v. Miller, 155 Miss. 115, 131, 124 So. 251. There has never been any purpose in any of these cases, nor in the present cases, to depart from Paxton v. Baum, and we now expressly reaffirm everything said in that case.

We said in our original opinion herein, as an introductory statement, that since the board of supervisors have jurisdiction of the subject-matter of lending the sinking funds of the county, the members of the board are not personally liable for errors of judgment in its exercise. Appellant contends that the statement is erroneous and may mislead the bench and bar in the future if not corrected. If interpreted as if the opinion had meant to say that when the board had jurisdiction of a general subject the board would be protected as to everything done under that general subject, the expression would be too broad; but the opinion is not open to

that interpretation. The opinion stated that the board had jurisdiction of a specific subject not of a general subject, and there the distinction is found.

Appellant argues that although the state tax collector was too late in his suit to recover the principal indebtedness, yet he was within time as to the installments of interest. Appellant earnestly insisted all the way through these cases that Miller v. Gore, 146 Miss. 327, 113 So. 203, is a controlling authority and that the loans became due immediately when made. We sustained appellant's contention in that respect, and yet he now argues that although the entire loan became due immediately when made, because of the illegal method followed in the making, yet the interest was due in installments, and he may recover because the interest installments are not barred. Interest is merely an incident to the principal sum, and when the principal becomes due, all interest thereon is likewise due unless in some conceivable case, if it can be so conceived, the contract expressly provides otherwise. But here the contract stipulations as to time of payment were invalid, and the entire sum became due at once when it came to the hands of the borrower, and hence there were no valid contract subsequent due dates for interest.

Overruled.